(Nos. 53842, 53846, 53894 cons.—

KNOX COLLEGE, Appellee, v. CELOTEX CORPORATION *et al.*, Appellants.

*Opinion filed November 13, 1981.—Rehearing denied January 29, 1982.*

408

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of

Chicago (James T. Ferrini, David B. McAfee, and Robert H. Mittelman, of counsel), for appellant Celotex Corp.

Charles G. Roth and Phillip B. Lenzini, of Peoria (Kavanagh, Scully, Sudow, White & Frederick, of counsel), for appellant Perkins & Will.

Davis & Morgan, of Peoria (Clifford E. Schneider and Brian W. Ruddell, of counsel), for appellants C. Iber & Sons, Inc., and Travelers Indemnity Co.

George V. Bobrinskoy, Jr., and Michele Odorizzi, of Mayer, Brown & Platt, of Chicago, and Douglas R. Mustain, of West, Neagle & Williamson, of Galesburg, for appellee.

JUSTICE RYAN delivered the opinion of the court:

Knox College, plaintiff, filed suit in the circuit court of Knox County against the defendants, Celotex Corporation (supplier of materials), Perkins and Will (architects), C. Iber and Sons (general contractor), and the Travelers Indemnity Company (surety on the performance bond of Iber). Motions were filed by all defendants to dismiss the various counts of the second amended complaint. The court allowed the motion as to Celotex on the ground that the allegations against that defendant reflected that the statute of limitations had run. The motions filed by the other defendants contended that the contents of those counts violated the provisions of the Civil Practice Act as to pleading. The court allowed the motions to dismiss, and the plaintiff elected to stand on its pleadings as to each count and did not ask leave or attempt to amend. On appeal, the appellate court reversed the dismissal as to all defendants. As to Celotex, the appellate court held that according to its construction of the discovery rule, the statute of limitations had not run on the plaintiff's cause of action against that defendant. As to the other defendants, the appellate court held that by construing the provisions of the Civil Practice

Act liberally, the counts against the other defendants were not defective and should not have been dismissed. (85 Ill. App. 3d 714.) We granted leave to appeal.

In 1964, Knox College entered into a contract with the architectural firm of Perkins and Will to design and supervise the construction of a math-science building on the college's Galesburg campus. The general contractor for this project was C. Iber and Sons, which provided a performance bond with the Travelers Indemnity Company as surety. C. Iber and Sons subsequently subcontracted the roofing work to White's Roofing and Insulation, Inc. Perkins and Will's original roofing specifications called for a built-up, bituminous membrane roofing of 4-ply, 20-year bondable organic felt and bitumen system. The specifications were later changed, with the knowledge of Knox College, to 2-ply roofing. It was argued that this change was authorized as a result of representations by the Celotex Corporation that the 2-ply system was the functional equivalent of the 4-ply system. Pursuant to the specifications change, White installed Celotex's 2-ply roofing in September 1970.

Soon after the roof was installed, it began to leak. From September 1970 until October 1973, White repaired the roof at its own expense, under the terms of its 5-year guarantee. In October of 1973, at White's request, the college began to share the expenses of roof repair with White. The roof continued to require occasional care. As of May 1976 the college had expended approximately $13,000 for roofing repairs.

In July 1976, the college was informed that the entire roofing membrane and insulation would have to be replaced. However, it was not until November of that year that the college was informed by an independent roofing consultant that the roofing problems might have been caused by deficiencies in the Celotex 2-ply roofing system. In the fall of 1977 and the spring of 1978, the entire roof was

replaced at a cost to Knox College of $135,000. On June 9, 1978, Knox College filed suit against the defendants for $175,000 in compensatory damages, plus punitive damages.

In the second amended complaint counts I through III alleged tortious misrepresentation and fraud on the part of Celotex in the promotion of the 2-ply roofing system and in the sale of "Celo-therm" insulation to plaintiff. Specifically, it was alleged that Celotex knew that its product was not suitable for the climate in locales similar to that of Knox College. Despite this knowledge, Celotex did not inform Knox of the situation or withdraw its product from the market. Count IV alleged that Perkins and Will, the architectural firm, breached certain duties it owed, which we will discuss in greater detail later. Counts V and VI alleged, respectively, breach of contract and breach of written guarantee by C. Iber and Sons. Finally, in counts VII and VIII, the plaintiff sought recovery against Traveler's Indemnity as surety on C. Iber's performance bond. The circuit court of Knox County, in granting the defendants' motions to dismiss the second amended complaint, found that counts I through III (against Celotex) were barred by the statute of limitations, count IV (against Perkins and Will) was to be stricken "as sounding both in tort and in contract, and possibly indemnity, the cause of action not being set out as required by Chapter 110, Section 33(2), Illinois Revised Statutes, 1977" (section 33(2) of the Civil Practice Act), and counts V through VIII were "insufficient within themselves to sustain a cause of action."

The appellate court, in reversing the decision as to counts I through III, concluded that Knox could not have been expected to know of the right to sue until November of 1976, when an independent expert informed Knox that the failure was or might have been caused by the deficiencies in the 2-ply roofing system. The appellate court further held that the statute of limitations on the cause of action was 5 years and that the complaint was timely filed.

The court continued that count IV was not defective because the allegations were sufficiently definite to inform the defendant of the claim which he had to meet. Likewise, counts V through VIII were not defective because they reasonably apprised the parties of the claim.

These same issues are now raised in this court. We will first consider counts I through III against Celotex, which involve solely the question of the statute of limitations. The limitations period applicable to fraud and tortious misrepresentation alleged in counts I through III is 5 years, as provided in section 15 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 16).

The discovery rule relating to the statute of limitations has been applied across a broad spectrum of litigation to alleviate what has been viewed as harsh results resulting from the literal application of the statute. The effect of the discovery rule is to postpone the starting of the period of limitations until the injured party knows or should have known of his injury. (See Scott, *For Whom The Time Tolls —Time of Discovery and the Statute of Limitations*, 64 Ill. B.J. 326 (1976); Notes and Comments, *The Evolution of Illinois Tort Statutes of Limitation: Where Are We Going And Why?*, 53 Chi.-Kent L. Rev. 673 (1977).) The difficulty in applying the discovery rule has been in giving meaning to the term commonly used stating the rule, "knows or should have known of his injury." If this phrase is construed to mean knows of one's physical injury, the period commences to run at an earlier time than if it is construed to mean knows that one has a cause of action against a particular person. There has been much uncertainty in this area. We need not detail the history of the development of the discovery rule in this State or discuss the various cases that have given different interpretations to the meaning of the word "injury" used in stating the rule. This court has recently considered the discovery rule in depth in two cases, and has adopted a construction of the rule which can

be termed neither narrow nor expansive. That is, we have held that the event which triggers the running of the statutory period is not the first knowledge the injured person has of his injury, and, at the other extreme, we have also held that it is not the acquisition of knowledge that one has a cause of action against another for an injury he has suffered. Rather, we have held in *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, and *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, that the statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. In those cases it was made clear that the term "wrongfully caused" does not mean that the plaintiff must have knowledge of the defendant's negligent conduct before the statute is triggered. In *Nolan* we stated:

> "We wish to emphasize that the rule we announce is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury and the defendants' negligent conduct. Not only is such a standard beyond the comprehension of the ordinary lay person to recognize, but it assumes a conclusion which must properly await legal determination. (*United States v. Kubrick* (1979), 444 U.S. 111, 124, 62 L. Ed. 2d 259, 271, 100 S. Ct. 352, 360-61.) Moreover, if knowledge of negligent conduct were the standard, a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received of a possible invasion of one's legally protected interests." (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 170-71.)

Also, it was made clear in those decisions that a plaintiff need not have knowledge that an actionable wrong was committed before the period begins to run. In *Nolan* we stated:

> "We hold, therefore, that when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute

begins to run and the *party is under an obligation to inquire further to determine whether an actionable wrong was committed."* (Emphasis added.) (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171.)

Also, in *Witherell* we stated the rule and obligation of the person to make diligent inquiry in this matter:

"The statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. At that point the *burden is upon the injured person to inquire further as to the existence of a cause of action."* (Emphasis added.) *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156.

The holdings in these cases are in accord with *United States v. Kubrick* (1979), 444 U.S. 111, 62 L. Ed. 2d 259, 100 S. Ct. 352, which held that the accrual of a cause of action does not await the awareness by a plaintiff that an injury was negligently inflicted, nor does it await the acquisition of knowledge of facts which would alert a reasonable person to suspect that a legal duty to him had been breached. Under the facts of that case, in which the plaintiff knew the cause of his injury, the court held, as this court did in *Nolan* and *Witherell,* that the plaintiff had the obligation to inquire whether a legal duty to him had been breached.

The term "wrongfully caused," as we have used that term in stating the rule, must be viewed as a general or generic term, and not a term of art. This is apparent from the holdings of *Nolan* and *Witherell* that the use of the term does not connote knowledge of negligent conduct or knowledge of the existence of a cause of action.

At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences. As we held in *Witherell* and *Nolan*, this is usually a question of fact, and as we view the facts before us, it is a

question of fact in this case.

It is true that Knox knew that the roof leaked almost as soon as it was completed. The trial court found this sufficient to alert Knox to the fact that something was wrong. We cannot say, as a matter of law, however, that that event started the running of the limitation period. Evidence may disclose that built-up roofs of this type often leak following installation due to some minor defects in the application of the material, which are usually easily corrected. It may be that the nature of the leak and the fact that the subcontractor undertook at once to remedy it were facts which would not cause a reasonable person to investigate further. However, if not the first leak, at some point along the line, Knox had sufficient information to put a reasonable person on inquiry as to the nature of the defect in the roof and whether a cause of action existed in favor of Knox. That point must be determined by the trier of fact, and it must determine whether that information was acquired more than 5 years prior to the time that Knox filed suit. Ill. Rev. Stat. 1977, ch. 83, par. 16.

As to count IV of the complaint, which charges the architectural firm of Perkins and Will with certain conduct, we find that the trial court correctly struck this count. In entering his order, the judge stated:

> "Count IV as to Perkins and Will is stricken as sounding both in tort and in contract, and possibly indemnity, the cause of action not being set out as required by Chapter 110, Section 33(2), Illinois Revised Statutes 1977."

Count IV of the complaint, in relevant part, alleges:

> "COUNT IV
> (Perkins & Will - Breach of Written Contract)
> 37. By virtue of entry into the written agreement with plaintiff more fully described in Paragraph 4 above, and attached to the Complaint as Exhibit 'A,' whereby Perkins & Will agreed to act as architect for the construction of Plaintiff's Math-Science Center,

Perkins & Will undertook to perform for Plaintiff the following duties:

A. 'Design Development Phase

a) The Architect shall prepare from the approved schematic design studies, the design development documents consisting of plans, elevations and other drawings, and outline specifications, to fix and illustrate the size and character of the entire Project in its essentials as to kinds of materials, type of structure, mechanical and electrical systems and such other work as may be required.'

B. 'Construction Documents Phase

a) The Architect shall prepare from the approved design development documents, working drawings and specifications setting forth in detail and prescribing the work to be done, and the materials, workmanship, finishes, and equipment required for the architectural, structural, mechanical, electrical, service-connected equipment, and site work . . . .'

C. 'Construction Phase—General Administration of Construction Contracts

✿ ✿ ✿ ✿

c) . . . [H]e will keep the Owner informed of the progress of the work, will endeavor to guard the Owner against defects and deficiencies in the work of Contractors . . . .'

38. Further, by implication of law, Perkins & Will, as architect, undertook to perform for Plaintiff one or more of the following duties and obligations arising out of its written contract with Plaintiff:

(a) The duty to specify only such materials and methods of construction as were fit for their intended purpose and use;

(b) The duty to conduct an investigation, consistent with the ordinary and reasonable skill usually exercised by persons in the profession of architecture, prior to specification of any materials or methods of

construction;

(c) The continuing duty, subsequent to specification of particular materials or methods of construction, to ascertain, and report to the client, new information creating doubt with respect to the validity of specifications previously made;

(d) The duty thoroughly to investigate defects, problems or failures occurring in the project, and promptly to ascertain, and report to the client, their cause.

39. Perkins and Will breached one or more the duties which it owed to Plaintiff in the following respects:

(a) The Celotex two-ply Specification No. 220-INS was unfit for use as a roofing membrane in Western Illinois, for reasons set forth in Paragraph 16 of Count I above;

(b) In the period of time prior to September, 1970, Perkins & Will could have ascertained that coated felt specifications, particularly two-ply systems, would present substantial risk of premature failure if installed in Western Illinois;

(c) Despite Plaintiff's prompt written notification to Perkins & Will of problems encountered in the roofing membrane as set forth in Paragraph 18 of Count I above, Perkins & Will failed thoroughly to investigate those conditions and report their cause to Plaintiff.

40. Plaintiff has been damaged as a result of the breaches of duty by Perkins & Will set forth above. Because of Perkins & Will's wrongful specification of the Celotex two-ply system, Plaintiff has incurred the costs of repair, replacement, aggravation, inconvenience and loss of use set forth in Paragraphs 10 and 17 above. In so far as any portion of Plaintiff's causes of action against Celotex might be held to be barred by the statute of limitations, Plaintiff has been damaged by Perkins & Will's failure to discover and report to Plaintiff the causes of the leaks in the roofing mem-

brane on Plaintiff's Math-Science Center."

Paragraph 37 of count IV alleges the duties the architect owed Knox under the written contract, and paragraph 38 alleges duties that arose by implication of law. It is not clear whether the alleged breach of the implied duties is an attempt to allege a cause of action based on a breach of implied contract, or on negligent performance of those duties. It is true that all of the allegations concern duties that arose by virtue of the contract of employment between Perkins and Will and Knox. The appellate court found this sufficient to uphold this count of the complaint. However, the allegations of count IV involve at least two separate and distinct causes of action, one based on the written contract and the other for either tort or implied contract. Section 33(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 33(2)) provides:

"Each separate claim or cause of action upon which a separate recovery might be had shall be stated in a separate count or counterclaim, as the case may be and each count, counterclaim, defense or reply, shall be separately pleaded, designated and numbered, and each shall be divided into paragraphs numbered consecutively, each paragraph containing, as nearly as may be, a separate allegation."

We agree with Knox that a contractual relationship may give rise to an action for breach of contract or an action in tort. However, when both actions are alleged in the same complaint, they should be set out in separate counts. Knox cites several appellate court cases which held that it is no error for a count to contain duplicitous pleading, that is, more than one cause of action alleged in a single count. (*Bernesak v. Catholic Bishop* (1980), 87 Ill. App. 3d 681; *Iverson v. Iverson* (1976), 38 Ill. App. 3d 308; *Adams v. J. I. Case Co.* (1970), 125 Ill. App. 2d 388; *Savoie v. Town of Bourbonnais* (1950), 339 Ill. App. 551.) There may be situations where such pleadings are appropriate and should not be stricken, especially in view of the section of the Civil

Practice Act requiring that pleadings be liberally construed with a view to doing justice between the parties (Ill. Rev. Stat. 1977, ch. 110, par. 33(3)). However, in our case it is important to note that different limitation periods apply to the different causes of actions alleged, and the statute of limitations is an important and possibly controlling aspect of this case because of the delay in filing suit. Section 40 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 40) requires that answers shall contain explicit admissions or denials of the allegations of the complaint; and section 43 requires that affirmative defenses be plainly set out in the pleadings (Ill. Rev. Stat. 1977, ch. 110, pars. 40, 43). With multiple causes of action involving different limitation periods pleaded in the same count, the admonitions of sections 40 and 43 will be difficult to follow. Also, other trial difficulties, including the giving of instructions, will confront the court, which the trial judge could properly attempt to avoid by requiring plain, concise and unambiguous pleadings. There appears to be no reason why Knox should not have attempted to amend the complaint to conform to the court's ruling. This is not a case in which the trial court dismissed the count and entered judgment without giving the plaintiff an opportunity to amend. The court did not find that it was impossible for the plaintiff to state a good cause of action against the defendant but only struck the count. The plaintiff elected to stand on the allegations of its complaint. Knox, in its brief, attempts to argue that any further attempt at amendment would have been futile, contending that "an infinite number of amendments" would not satisfy the judge. This argument is not persuasive. The defect could easily have been remedied by setting forth the allegations of count IV in two or more counts.

Although pleadings are to be liberally construed, and a defendant's motion to dismiss admits all facts well pleaded, nonetheless, in considering a motion to dismiss, the pleadings are to be construed strictly against the pleader. (*Carroll*

*v. Caldwell* (1957), 12 Ill. 2d 487, 493; *Gagne v. Village of LaGrange* (1976), 36 Ill. App. 3d 864.) The purpose of requiring that defects in pleadings be attacked by motion (Ill. Rev. Stat. 1977, ch. 110, par. 45) is to point out the defects in the pleadings so that the complainant will have an opportunity to cure them before trial (*Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 177). The granting of the motion to strike or dismiss is within the sound discretion of the trial court. (*Deasey v. City of Chicago* (1952), 412 Ill. 151; *Gagne v. Village of LaGrange* (1976), 36 Ill. App. 3d 864.) We cannot say that the trial court, in this case, abused its discretion in striking count IV. It was Knox's decision not to amend but to permit a judgment to be entered against it on this count.

Count IV is captioned "(Perkins & Will - Breach of Written Contract)." In one part of its brief Knox contends that this count is solely an action on a written contract and therefore would not contain multiple causes of action. Presumably, because of the longer limitation period applicable to actions on a written contract (Ill. Rev. Stat. 1977, ch. 83, par. 17), Knox has captioned this count, as well as the subsequent counts in the complaint, as actions on a written contract. However, in count IV Knox alleges certain duties that arise out of the written contract and alleges duties that arose by implication of law. The complaint then alleges that the duties owed to Knox were *breached* without alleging whether they were the contractual duties or the implied duties. There were further allegations that refer to conduct of this defendant long after the completion of the contract. If Knox intended these allegations to charge a breach of a written contract, we can only say that the allegations are ambiguous and would constitute problems in framing subsequent pleadings and at trial. As we stated above, it was within the trial court's discretion to attempt to avoid these subsequent problems by striking the ambiguous pleading, especially, as noted above, since in ruling on such a motion

the pleadings are to be construed strictly against the pleader.

Counts V and VI are against C. Iber and Sons, Inc., the general contractor for the project, and counts VII and VIII are against the Travelers Indemnity Company as surety on Iber's performance bond. Count V against Iber alleges a cause of action based on the construction contract, and count VI alleges that under the contract Iber agreed to construct a roof that was guaranteed for 5 years, and plaintiff seeks to recover by virtue of the guarantee. Iber and Travelers filed motions to dismiss. The trial court, in granting the motions, stated that each count was insufficient to state a cause of action when the factually unsupported conclusions contained therein were disregarded. Here, also, Knox chose to stand on its pleadings, and the court thereafter entered judgment against it.

Knox argues that the allegations of these counts are sufficient to inform Iber and Travelers of the nature of the claims they are called upon to meet, relying upon section 42(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 42(2)), which states:

> "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet."

However, in the Historical and Practice Notes to that section in Smith-Hurd Annotated Statutes, it is stated:

> "Subsection 2 must be construed with other sections of the Act and cannot be interpreted as making other sections inoperative. Section 31 of the Act requires 'substantial averments of fact necessary to state any cause of action.' Section 33 of the Act requires 'a plain and concise statement of the pleader's cause of action.' Sections 33 and 43 of the Act require each cause of action or defense to be separately pleaded and designated. *** The present section does not replace these sections, but permits formal defects to

be ignored, and makes it unnecessary to state all facts that would be material if the parties were strangers to the litigation. It does not relieve the pleader of the necessity of stating a cause of action. [Citations.]

\* \* \*

Notice pleading, which prevails under the federal rules (Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80, (1957)), is not sufficient under the Illinois Civil Practice Act. The pleader must state the facts essential to his cause of action. A pleading which merely paraphrases the law, 'as though . . . to say that [the pleader's] case will meet the legal requirements, without stating the facts,' is insufficient. Richardson v. Eichhorn, 18 Ill. App. 2d 273, 276, 151 N.E.2d 819, 821 (4th Dist. 1958)." (Ill. Ann. Stat., ch. 110, par. 42, Historical and Practice Notes, at 98-99 (Smith-Hurd 1968).)

To properly consider the problem, it is necessary to set forth in detail the relevant allegations of count V, which provide as follows:

## "COUNT V
### (Iber—Breach of Written Contract)

42. By virtue of its position as general contractor of the project, pursuant to the written contract, a true copy of which is attached to the Complaint as Exhibit 'B,' Defendant, Iber, obligated itself to cause all construction work in connection with the Math-Science Center to be performed in accordance with plans and specifications and in a reasonably workmanlike manner, a true and accurate copy of the relevant portions of which is attached to this Complaint as Exhibit 'K' and made a part hereof by reference.

43. On or about January 27, 1969, Iber entered into a contract with Plaintiff to build among other things the concrete deck of the aforedescribed building and install the roof on said building; the contract is attached as Exhibit 'B' to the Complaint and made a part here by reference.

44. After the dates of the execution of said con-

tract and subcontract, Iber and its subcontractors entered into the performance of said contract.

45. Contrary to these obligations, Defendant, Iber, caused, or permitted, construction such that the cement roof deck from time to time experienced cracks and splits which, Plaintiff alleges in part caused or contributed to the splits in the roofing membrane described above, all to Plaintiff's damage.

46. Defendant, Iber, failed to comply with said contract in one or more of the following respects.

a. Failed to supervise and direct the work of its subcontractors;

b. Failed to correct the work of its subcontractors which did not conform to the requirements of the contract documents;

c. Failed to remedy defects to faulty materials, equipment and workmanship of its subcontractors;

d. Contrary to standard practice and good workmanship allowed concrete deck to be made in a manner which allowed the concrete to crack, thereby causing leaks to occur in said roof at the cracks;

e. Contrary to standard practice and good workmanship installed said concrete decking in a manner which caused the concrete decking to crack, causing leaks to occur in said roof at the cracks;

f. Contrary to standard practice and good workmanship allowed White to install on the Math-Science Center defective roof membrane of a two-ply specification manufactured by Defendant, Celotex, the Barrett Bond Ply No. 220-INS as described in Paragraphs 12 and 13 which said roof membrane because of said defects split and cracked causing said roof to crack and peel;

g. Contrary to standard practice and good workmanship allowed White to install defective roof insulation "Celo-therm" as described in Paragraphs 29 and 30 which said insulation because of said defects caused the said roof to leak and split;

h. Contrary to specifications, standard practice, and good workmanship failed to inspect the work of its agents, servants and subcontractors; and

i. Otherwise failed to follow standard practice and good workmanship in the installation of the deck, insulation and roof.

47. As a result of one or more of the foregoing breaches of contract, numerous leaks occurred throughout the roof of the Plaintiff's Math-Science Building, and the Defendant failed to repair, correct and remedy the same."

Although the allegations of this count may generally inform Iber of the nature of the claim it will be called upon to defend, it must be kept in mind that section 42(2) of the Civil Practice Act does not relieve Knox of the obligation to plead facts and not conclusions, as stated in the Historical and Practice Notes quoted above. Applying simple logic to the question, if a motion to dismiss admits only facts well pleaded and not conclusions, then, in considering the motion, if after deleting the conclusions that are pleaded there are not sufficient allegations of fact which state a cause of action against the defendant, the motion must be granted regardless of how many conclusions the count may contain and regardless of whether or not they inform the defendant in a general way of the nature of the claim against him. In *Richardson v. Eichhorn* (1958), 18 Ill. App. 2d 273, the court noted the differences in the considerations to be applied when reviewing a case after judgment, based on evidence, from those to be applied in a case when the complaint is directly attacked by motion. In the latter situation, "the motion admits facts well pleaded, and conclusions may be proper if based on facts set forth, but the motion does not admit conclusions or inferences by the pleader, such as conclusions of law or of fact unsupported by allegations of specific facts on which the conclusions must rest." *Richardson v. Eichhorn* (1958), 18 Ill. App. 2d 273, 276.

Notice pleading, as known in some jurisdictions, is not

sufficient under our practice act. (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 8.) Although both sections 42(2) and 33(3) of our practice act contain provisions concerning liberal construction, such provisions do not remedy the failure of a complaint to state a cause of action. In *People ex rel. Kucharski v. Loop Mortgage Co.* (1969), 43 Ill. 2d 150, 152, this court said:

"This court has repeatedly held that a complaint which does not allege *facts,* the existence of which are necessary to enable a plaintiff to recover does not state a cause of action and that *such deficiency may not be cured by liberal construction* or argument." (Emphasis added.)

The same statement was made by this court in *Belmar Drive-In Theatre Co. v. Illinois State Toll Highway Com.* (1966), 34 Ill. 2d 544, 549, and in *Fanning v. LeMay* (1967), 38 Ill. 2d 209, 211. In *Psyhogios v. Village of Skokie* (1972), 4 Ill. App. 3d 186, 191, the appellate court stated:

"Since the passage of the Civil Practice Act in Illinois, our courts have consistently held that pleadings should be liberally construed and we have attempted to dispense with the technical niceties of common law pleading. [Citations.] However, this jurisdiction has never abandoned the essential substantive principle that a complaint must allege facts which are sufficient to state a cause of action."

With the exception of the allegations of subparagraphs (f) and (g) of paragraph 46 of count V, the allegations of that count are generally conclusions of law and fact unsupported by any allegation of specific facts on which these conclusions may rest, which, as stated in *Richardson v. Eichhorn,* are not sufficient to withstand a motion to dismiss. The specific allegations of subparagraphs (f) and (g) of paragraph 46 relate to the installation of the allegedly defective Celotex roofing material, which the complaint plainly shows was specified by the architect and which, under the contract, Iber was obligated to install. Iber had no

alternative but to comply with this requirement of the contract, and it was his duty to install the material complained of in subparagraphs (f) and (g). (See *R. F. Conway Co. v. City of Chicago* (1916), 274 Ill. 369; *Clark v. Pope* (1873), 70 Ill. 128; *St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill. App. 3d 925.) These specific factual allegations do not support the other conclusions contained in count V, nor do they, standing alone, state a cause of action against this defendant. Also, although count V alleges that Iber obligated itself to cause all construction work to be performed in accordance with the plans and specifications, nowhere in count V is it alleged that the work was not done in accordance with the plans and specifications. The trial court did not err in granting Iber's motion to dismiss count V.

In count VI, paragraph 54 contains the substance of the allegations of paragraph 45 of count V, and paragraph 56 of count VI contains the same allegations as paragraph 46 of count V. The insufficiencies of these allegations in relation to count V, as previously noted, likewise render them insufficient to state a cause of action in count VI. Although count VI is based on an alleged guarantee, it is not alleged in that count that Iber was notified of any leaks in the roof during the life of the guarantee or that Iber failed and refused to repair any leaks during the life of the guarantee. We hold that the trial court did not abuse its discretion in dismissing this count.

Our holdings with regard to count V and VI are controlling as to counts VII and VIII against Travelers. In these four counts, as in the others, it was plaintiff's decision not to amend the complaint to remove the deficiencies in the pleadings pointed out by the motions. In these counts, as in the others, the court did not prohibit the plaintiff from filing an amendment and did not find these counts fatally defective in that they were incapable of stating a cause of action. The court, in the exercise of its sound discretion,

granted these motions. We find that its discretion was not abused.

Accordingly, the appellate court and the circuit court of Knox County are both reversed as to counts I through III against Celotex, and the cause is remanded to the circuit court of Knox County for the factual determination of when the statute of limitations against said defendant began to run according to the holding of this opinion. As to count IV against Perkins and Will, the appellate court is reversed and the circuit court of Knox County is affirmed. As to counts V, VI, VII, and VIII against Iber and Travelers, the appellate court is reversed and the circuit court of Knox County is affirmed.

*Appellate court reversed;*
*circuit court affirmed in*
*part and reversed in*
*part; cause remanded.*