ROBERT H. SCHLEYHAHN *et al.*, Plaintiffs-Appellees, v. KEN COLE, Indiv. and d/b/a Cole Development, Defendant-Appellant.

Fourth District No. 4—88—0165

Opinion filed January 9, 1989.

Harold M. Olsen and Nils A. Olsen, both of Olsen & Olsen, Ltd., of Springfield, for appellant.

Patrick James Smith, of Delano Law Offices, P.C., of Springfield, for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This case arises from a suit filed by the purchaser of a home against a builder-vendor in Sangamon County. The plaintiffs charged negligent construction and at trial the jury so found. On appeal, the defendant argues the statute of limitations had run, barring plaintiffs' action, and there was insufficient evidence to support the jury's verdict. We disagree.

On February 25, 1976, plaintiffs Robert and Patricia Schleyhahn contracted to purchase a house built by defendant Ken Cole. On April 12, 1976, the property was conveyed to plaintiffs and they continued to occupy the house at the time they filed suit.

In the spring of 1985, plaintiffs discovered a water spot on the interior south wall of the residence. After investigation, the plaintiffs found a crack in the brick veneer of this wall which they repaired. In May 1986, plaintiffs began to remodel their bathroom. In the course of removing the wallpaper in this room, they noticed the plasterboard of the south wall was discolored and deformed. Removing the damaged plasterboard, they discovered the studs and sheathing had rotted at the bottom of the wall and the plate, the horizontal wooden member on which the studs rest, had rotted away entirely.

In order to find where the water was entering, plaintiffs sprayed the exterior of the wall with water and were able to observe water running down the inside of the wall as a result. Further investigation

revealed that the damage extended along most of the length of the south wall. On the advice of a contractor, plaintiffs replaced the south wall, including the brick veneer, sheathing, stud work, insulation, and wallboard.

Plaintiffs filed suit on August 19, 1986, alleging negligent construction. Defendant filed affirmative defenses including a statute of limitations defense. A jury trial began on December 16, 1987. Plaintiffs testified to their ownership and maintenance of the home, as well as to the discovery and repair of the damage. The brick mason who oversaw the repair of the south wall testified that many of the brick joints were not properly mortared and there were small holes in the brick veneer. Mortar had improperly been allowed to come in contact with the sheathing. This allowed moisture to seep from the brick veneer to the sheathing and from there into contact with the studs. He also testified the veneer had lacked weep holes to let out moisture, damage to the wooden members was confined to the bottom of the wall, and the rot discovered could only have occurred over a long period of time.

Plaintiffs' general contractor also testified to his examination of the south wall. There were numerous small holes in the wall, water had penetrated the brick veneer readily, and there were no weep holes or flashing at the foot of the wall. As a result, he had recommended the wall be replaced. During cross-examination, he stated that it was unlikely water from the gutters could have crossed the perforated soffit at the top of the wall and caused this type of damage.

Defendant presented the testimony of two experienced contractors. While neither had an opportunity to examine the wall of plaintiffs' home, they stated it was typical to have some mortar come in contact with the sheathing. It would be possible for water to back up in the gutter, run across the soffit, and down the interior wall but mortar touching the sheathing would not account for the damage to plaintiffs' home. On cross-examination, however, they stated that if water entered via the soffit, there would be visible damage to the upper part of the wall as well as the lower.

The jury returned a verdict for the plaintiffs in the amount of $6,938 on December 17, 1987. Post-trial motions were denied on February 2, 1988, and a notice of appeal filed on March 3, 1988.

On appeal, defendant argues the plaintiffs' action is barred by the limitation of 10 years in section 13—214(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—214(b)). Plaintiffs counter the defendant failed to introduce evidence, to argue the issue to the jury and to tender jury instructions on this issue, thereby waiving any

argument on appeal.

Plaintiff here had four years from the time he or his privy knew or should reasonably have known of the contractor's act or omission. In any event, the discovery must occur within 10 years. When the act or omission is discovered prior to the 10-year period, plaintiff has four years to bring an action. Ill. Rev. Stat. 1985, ch. 110, par. 13—214(b).

 █ Generally, an appellate court will not consider, for the first time on appeal, a defense not interposed by answer and supported by evidence at trial. (*National Acceptance Co. of America v. Pintura Corp.* (1981), 94 Ill. App. 3d 703, 418 N.E.2d 1114.)

As to the statute of limitations, the record reveals:

(1) Defendant raised defense:

 (a) by motion to dismiss, which was denied;

 (b) affirmative defense and amended affirmative defense.

(2) At the close of the first day of trial, December 16, 1987, defendant argued for dismissal. The record does not reveal any motion, oral or written. Plaintiff did not respond to defendant's argument and trial court stated:

"I think there's sufficient evidence in the Statute of Limitations, and I think it's been ruled on several times before. It's denied."

Defendant's attorney then pointed out that the statute of limitations had not previously been ruled on. The trial court's response:

"I think there's sufficient evidence in the light most favorable to plaintiff to bring them within the statute."

(3) Defendant's post-trial motion.

(4) No record of conference on instructions. Record does show trial court's statement that he would give plaintiff's instruction No. 16—IPI No. 20.01 (Illinois Pattern Jury Instructions, Civil, No. 20.01 (2d ed. 1971) (IPI Civil 2d); No. 18—IPI Civil 2d No. 20.03; and No. 18A—IPI Civil 2d No. 50.02, over objection of defendant.

(5) No instructions offered by defendant; nor does record show defendant's reasons for objections to plaintiff's instructions Nos. 16, 18 and 18A.

Defendant's argument at the close of plaintiff's case and the ruling of the trial court reveal at most a motion to dismiss per the statute of limitations. The trial court simply found "sufficient evidence in the light most favorable to plaintiff to bring them within the statute." Defendant does nothing more, specifically presents no evidence on the

issue and does not tender instructions on the affirmative defense which would allow the court to rule thereon. Contrary to defendant's argument, the record does not show a denial by the trial court of his statute of limitations defense.

Plaintiffs argue they first had knowledge of the injury in the spring of 1985, when they observed damp spots on the interior of the southern wall and were forced to make repairs to a crack in the exterior brick veneer. Defendant argues the discovery of the crack and its repair were not related to the damages discovered a year later. He argues the large crack in 1985 was not the same fault testified to as the cause of the damage which is the subject of this suit. He further argues plaintiffs failed to investigate in 1985 whether a legal duty had been breached and to pursue legal action at that time.

Secondly, defendant argues failure to carry out any investigation in 1985 is a bar to invoking the grace period of four years in the statute. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976, states the discovery rule in Illinois:

> "At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences." *Knox College*, 88 Ill. 2d at 416, 430 N.E.2d at 980-81.

More recently, this court has held that a plaintiff need not have actual knowledge of negligent conduct or knowledge of a cause of action before the statute may be triggered. Rather, at some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. (*People ex rel. Skinner v. Graham* (1988), 170 Ill. App. 3d 417, 524 N.E.2d 642.) In this case, plaintiffs were possessed of such knowledge when they found the damp spot and exterior crack in the spring of 1985. While this initial discovery gave no indication of the seriousness or extent of the damage ultimately discovered, there was a sufficient nexus between this defect and the damage later revealed. Generally, the question as to whether a party knew or should have known is a question of fact unless the facts are undisputed and only one conclusion can be drawn from them. (*Lesko v. Zuffante* (1987), 165 Ill. App. 3d 823, 520 N.E.2d 810.) Here, defendant was unable to adequately show that the 1985 crack could not have contributed to the damage or to propose a plausible alternative theory as to how the damage occurred. The statute of limitations is an affirmative defense and the burden rests on the

party asserting it to show its applicability. *C.S. Johnson Co. v. Champaign National Bank* (1984), 126 Ill. App. 3d 508, 467 N.E.2d 363.

The defendant's post-trial motion presents to the trial court the issue, whether as a matter of law the record shows the statute of limitations should be applied to deny plaintiff relief. The jury's verdict should be upheld unless as a matter of law there was no proof the incident occurred beyond the statute of limitations period. The evidence presented does not as a matter of law show the statute of limitations is a bar to plaintiff's recovery.

The defendant also suggested the statute of limitations is intended to provide notice to a defendant of claims pending against him and provide an opportunity to preserve evidence. The primary purpose of limitation periods is to require the prosecution of a right of action within a reasonable time to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 334 N.E.2d 160.) However, any statute of limitations is, by definition, arbitrary. (*Nendza v. Board of Review of the Department of Labor* (1982), 105 Ill. App. 3d 437, 434 N.E.2d 470.) Plaintiffs are in no way estopped from bringing their action by the death of witnesses or loss of records favorable to defendant resulting from the passage of time. Neither are they estopped by their failure to immediately investigate and pursue a legal remedy after the discovery of what appeared to be a minor defect in 1985. The fact that plaintiffs did not immediately rush to the courthouse should not redound to the benefit of defendant so long as the plaintiffs' discovery came within the statutory limitation period and the action was commenced within the four-year grace period.

■■■ The defendant also argues the jury's verdict was unsupported by the evidence. A builder-vendor of a residence impliedly warrants that it is reasonably suited for its intended use. Defects which do not make the new home totally unhabitable are nevertheless covered by the warranty of habitability. (*Wiersema v. Workman Plumbing, Heating & Cooling, Inc.* (1980), 87 Ill. App. 3d 535, 409 N.E.2d 159.) To establish a breach of warranty of habitability purchasers are required to prove the home had a latent defect caused by improper design, material, or workmanship, which rendered the property unsuitable for use as a home. (*Fischer v. G & S Builders* (1986), 147 Ill. App. 3d 168, 497 N.E.2d 1022, *appeal denied* (1987), 113 Ill. 2d 573, 505 N.E.2d 352.) In this case, the plaintiffs presented testimony concerning both the nature of the defect and how the damage was a result of the defect. Plaintiffs' theory was the mortar in the exterior

brick veneer was both too thick in some places and too thin in others. Where too thick, it was extruded from between the bricks and touched the sheathing behind it, allowing moisture to pass directly from the brick veneer across the airspace into the sheathing. In those places where the mortar was too thin, holes developed, allowing water to penetrate directly into the airspace. There were no weep holes or flashing in the base of the wall which would allow any water which accumulated to pass to the outside.

Defendant, in reviewing the evidence, presents a number of arguments which he contends disprove the plaintiffs' theory. He argues that water in the gutters could have backed up and caused the damage but at trial was unable to present any evidence this occurred. Defendant points out that water which passed through the brick veneer would tend to run down the interior surface of the veneer and not be able to cross the airspace. The testimony of defendant's expert was that about 25% of the mortar touched the sheathing and this would have been insufficient to cause water to accumulate at the base of the wall. It was plaintiffs' theory, however, that the moisture crossed the airspace via the excess mortar, through the sheathing and on to the studs. One of defendant's experts stated he did not believe leakage through the brick wall was sufficient to cause the damage, and suggested leakage through the gutters was a possibility. However, he admitted that had this happened, he would expect to see signs of damage at the top of the wall as well as the bottom. Other testimony indicated there was no damage at the top of the wall.

Defendant further argues the plaintiffs did not rebut testimony that any water should have drained away through the footing and not accumulated to cause the rotting seen here. Plaintiffs need not disprove every theory which defendant propounds. The evidence clearly showed damage which could only be caused by the accumulation of moisture over a considerable period of time. Plaintiffs gave evidence of the damage and presented a plausible theory of how it came about. Defendant presented alternative theories which did not conform entirely to the evidence and failed to show the damage could not have occurred in the way suggested by plaintiffs. Defendant has not shown the jury's verdict was contrary to the manifest weight of the evidence. A verdict is contrary to the manifest weight of the evidence only if it is wholly unwarranted by the evidence. It is not contrary to the manifest weight of the evidence where the evidence is conflicting and the jury resolved conflict. (*Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711.) Here, plaintiffs' theory was fully supported by the evidence. Although defendant presented an alternative theory,

118

the jury's decision reflects that defendant failed to present sufficient evidence to make it plausible.

For this reason and those stated above, we affirm the verdict of the circuit court.

Affirmed.

LUND and GREEN, JJ., concur.