NOTICE
Decision filed 04/23/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241177-U

NO. 5-24-1177

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| HEATHER L. ROBERTS and CHAT ROBERTS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Madison County. |
| | ) | |
| v. | ) | No. 22-LA-1242 |
| | ) | |
| DR. RICHARD NICOL, INFINITY-MEDS, LLP, and PANDURANGA KINI, M.D., Defendants, | ) | |
| | ) | Honorable |
| | ) | Christopher P. Threlkeld, |
| (Panduranga Kini, M.D., Defendant-Appellee). | ) | Judge, presiding. |

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in entering summary judgment for defendant-appellee where the plaintiffs' claims against him were barred by the statute of limitations.

¶ 2    The plaintiffs, Heather L. Roberts and Chat Roberts, appeal from the trial court's order granting summary judgment in favor of the defendant, Panduranga Kini, M.D. On appeal, the plaintiffs contend that the trial court misapplied the discovery rule and the statute of limitations in finding their cause of action against Dr. Kini was time barred and that there is a question of fact as to when their cause of action against Dr. Kini accrued. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The pertinent background facts are taken from the pleadings, deposition excerpts, and exhibits in the record on appeal. On July 21, 2017, at approximately 12:21 p.m., Heather Roberts

1

went to the emergency department at St. Joseph's Hospital in Highland, Illinois, with complaints of numbness, weakness, and tingling on the left side of her body. She reported that she had received a chiropractic adjustment at 11:30 that morning and that her symptoms began about 15 minutes later. She denied headaches, visual changes, chest pain, shortness of breath, or difficulties with speech or walking.

¶ 5    Heather was evaluated by a Dr. Richard Nicol, a physician who worked in the emergency department at St. Joseph's Hospital. Dr. Nicol conducted a physical examination and then began a stroke workup, including CT scans of the cervical spine and the brain. When Dr. Nicol received the results of Heather's CT scans, he called Dr. Kini to consult about Heather's condition. At that time, Dr. Kini was neurologist on staff at St. Elizabeth's Hospital. Pursuant to an agreement with St. Elizabeth's, he also acted as an "on call" neurology consultant for emergency department physicians at four "sister" hospitals, including St. Joseph's Hospital. Dr. Kini was not on staff at St. Joseph's Hospital, and he did not have admitting privileges there. Consequently, he could not order medical tests or manage treatment for patients receiving care at St. Joseph's Hospital.

¶ 6    During the initial telephone consultation, Dr. Nicol informed Dr. Kini about Heather's history of left-sided numbness, weakness, and tingling following a chiropractic manipulation of the cervical spine. Dr. Nicol also related his findings from Heather's physical examination along with the results of the CT scans. After considering the information, Dr. Kini recommended that Dr. Nicol obtain an MRI of Heather's brain. Due to the requirements in Heather's health insurance plan, Dr. Nicol asked Heather's acute care nurse practitioner, Dori Duckworth, to obtain prior authorization for the MRI. After Duckworth's staff determined that prior authorization was not required, Duckworth ordered a "stat" MRI scan. The emergency department records indicate the MRI was ordered at 3:16 p.m., "per recommendation of Neurologist at Belleville after evaluation

2

of head CT trying to rule out a stroke." When Dr. Nicol received the MRI report, he notified Dr. Kini of the results. He also informed Dr. Kini that Heather's condition had improved. Dr. Kini suggested that the patient could be discharged with instructions to call him the next morning for an appointment and to take aspirin daily.

¶ 7 According to the emergency department records, Heather was discharged in stable condition at 5:04 p.m. on July 21, 2017. She received several pages of general instructions and the following additional instructions: "Take ASA 81 mg daily[.] Follow up Dr. Kini, [c]all him in a.m. for appointment[.] Return as needed." Upon discharge, Heather and her husband, Chat Roberts, received verbal and written instructions to follow up with Dr. Kini and to call him for an appointment the next morning.

¶ 8 Heather awoke at approximately 9:30 a.m. the next day complaining of a headache. Chat noticed that Heather was not steady as she walked to the bathroom. She was able to speak to him, but it was like she misplaced some of her words. Chat called 911. At Chat's request, Heather was transported by ambulance to Barnes Jewish Hospital in St. Louis, Missouri. Heather was evaluated in the emergency department and admitted to the intensive care unit. A CT scan and CT angiography of Heather's head showed a complete thrombotic occlusion of the mid-basilar artery. Heather underwent an aspiration thrombectomy and stenting of the cervical left vertebral artery. She was discharged on August 2, 2017. She required additional medical care and treatment after discharge.

¶ 9 On September 18, 2018, the plaintiffs filed a medical negligence action against Dr. Nicol in the circuit court of Madison County. Count I was filed on behalf of Heather and alleged that Dr. Nicol deviated from the standard of care in that he failed to timely and appropriately evaluate, treat, and monitor Heather's neurological condition, failed to timely order appropriate tests and

3

studies to assess Heather's neurological condition, and failed to take timely and appropriate action in response to Heather's neurological condition. It was further alleged that as a direct and proximate result of one or more of Dr. Nicol's negligent acts or omissions, Heather's condition went undiagnosed and untreated for a substantial period of time resulting in severe and permanent injuries. Count II was a derivative loss of consortium claim filed on behalf of Chat Roberts.

¶ 10 An affidavit by plaintiffs' counsel dated September 18, 2018, and a report by a reviewing physician were appended to the complaint pursuant to section 2-622(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-622(a) (West 2016)). In the report, the reviewing physician stated that based upon a review and consideration of the pertinent medical documents concerning the care and treatment of Heather Roberts on July 21, 2017, there was a reasonable and meritorious basis for an action against Dr. Nicol. The reviewing physician opined that Dr. Nicol deviated from the acceptable standards of medical practice in that he failed to "include and/or document consideration for vertebral artery dissection/thrombosis or basilar artery thrombosis." The reviewing physician noted there was "no documentation that Dr. Nicol ordered a CT angiogram to rule out vascular insufficiency of the cerebral posterior circulation" and concluded that the failure to do so caused in a delay in diagnosis and treatment which resulted in a "worsening of Heather Roberts['] cerebral vasculopathy with a left thalamic stroke and bilateral pons infarction on July 22, 2017."

¶ 11 On May 26, 2020, the plaintiffs filed a second amended complaint. Counts I and II of the second amended complaint were brought against Dr. Nicol and contained the same allegations of negligence as in the original complaint. Counts III and IV were directed against Infinity Meds LLP and alleged that it was liable for the negligence of Dr. Nicol under a theory of agency or apparent

4

agency.[1] Counts V and VI were directed against Dr. Kini. In count V, Heather alleged that Dr. Kini was a neurologist who consulted with Dr. Nicols about Heather's condition during her emergency department visit on July 21, 2017. Heather further alleged that Dr. Kini deviated from the applicable standard of care in that he failed to timely and appropriately evaluate, treat, and monitor Heather's neurological condition; failed to timely order appropriate tests and studies to assess Heather's neurological condition; and failed to take timely and appropriate action in response to Heather's neurological condition. As a direct and proximate result of one or more of Dr. Kini's negligent acts or omissions, Heather's condition went undiagnosed and untreated for a substantial period of time resulting in severe and permanent injuries. Heather also alleged that she did not know or have reason to know of Dr. Kini's involvement in her medical care until she received Dr. Nicol's answers to plaintiffs' interrogatories in which Dr. Nicol provided details of the July 21, 2017, consultation with Dr. Kini. Count VI contained a loss of consortium claim by Chat Roberts.

¶ 12    The plaintiffs attached a written report, dated March 27, 2020, by a board-certified neurologist and vascular neurologist to the second amended complaint. In the report, the reviewing neurologist indicated that he reviewed Heather's medical records from St. Joseph's Hospital along with Dr. Nicol's interrogatory answers and determined there was a reasonable and meritorious basis for an action against Dr. Kini. The reviewing neurologist opined that Dr. Kini was the neurologist who was consulted about appropriate treatment for Heather on July 21, 2017, and that Dr. Kini deviated from the acceptable standards of medical practice in that he failed to appropriately consider "the most common neurovascular complication of chiropracty, vertebral

---

[1]We glean from the record that Infinity-Meds LLP was added as a defendant in a prior amendment to the plaintiffs' complaint. However, that amended complaint is not included in the record on appeal. Infinity-Meds LLP was subsequently dismissed from the lawsuit and took no part in this appeal.

artery dissection," and thus he did not recommend an urgent CT angiography to screen for that diagnosis or a transfer of the patient to an appropriate stroke center. The reviewing neurologist concluded that Dr. Kini's negligence "resulted in a critical delay in the diagnosis and treatment of her subsequent stroke in the left thalamus and bilateral pons on July 22, 2017."

¶ 13    On September 29, 2021, the trial court granted the plaintiffs' motion for voluntary dismissal of their complaint, without prejudice and with leave to refile, over the objections of the defendants. On October 14, 2021, the plaintiff filed a new complaint against the same defendants in the circuit court of St. Clair County. The allegations of negligence in the new complaint were more specific than the allegations in the Madison County action. Count I (medical negligence) and count II (loss of consortium) were directed against Dr. Nicol. The plaintiffs alleged that Dr. Nicol was negligent and deviated from the applicable standard of care in that he failed to consider the neurovascular condition of vertebral artery dissection/thrombosis, failed to recommend or order the appropriate diagnostic testing to adequately screen for the diagnosis of vertebral artery dissection/thrombosis, and failed to recommend that Heather be transferred to an appropriate stroke center.

¶ 14    Count V (medical negligence) and VI (loss of consortium) were directed against Dr. Kini. In those counts, the plaintiffs alleged that Dr. Kini was a neurologist who consulted with Dr. Nicol about Heather's condition during her emergency department visit on July 21, 2017. They further alleged that Dr. Kini was negligent and deviated from the applicable standard of care in that he failed to consider the neurovascular condition of vertebral artery dissection/thrombosis, failed to recommend or order the appropriate diagnostic testing to adequately screen for the diagnosis of vertebral artery dissection/thrombosis, and failed to recommend that Heather be transferred to an appropriate stroke center. In addition, the plaintiffs asserted that they did not know or have reason

to know of the nature and extent of Dr. Kini's involvement in Heather's medical care and treatment or that they may have a cause of action against him until August 16, 2019, when Dr. Nicol provided interrogatory answers delineating Dr. Kini's role. Affidavits of merit by plaintiffs' counsel along with the respective reports of the reviewing physicians were attached to the complaint filed in St. Clair County.[2]

¶ 15     In response, the defendants filed motions to transfer the case to Madison County under the doctrine of intrastate *forum non conveniens*. On June 17, 2022, the St. Clair County circuit court granted the defendants' motions to transfer. Following denial of the plaintiffs' petition for leave to appeal, the case was transferred to the circuit court in Madison County for further proceedings.

¶ 16     On July 9, 2024, Dr. Kini filed a motion for summary judgment and a supporting memorandum. Dr. Kini initially claimed he was entitled to summary judgment because the plaintiffs' claims against him were barred by the statute of limitations. Citing section 13-212 of the Code (735 ILCS 5/13-202 (West 2020)), Dr. Kini argued that the plaintiffs did not file their cause of action against him within the two-year statute of limitations for medical negligence and that they did not present any evidence to support their contention that they did not know about Dr. Kini's substantive involvement in Heather's care until they received Dr. Nicol's interrogatory answers on August 16, 2019. Dr. Kini claimed that the plaintiffs had sufficient information on July 21, 2017, to conduct an inquiry to determine whether a cause of action existed against him. In support, Dr. Kini pointed out that he was named as a consultant in the emergency department records, that Chat Roberts was advised that Dr. Nicol was consulting with a specialist as part of the stroke workup, and that Chat Roberts had requested and received a copy of Heather's

---

[2]We note that the physician's report that was attached to the original complaint brought against Dr. Nicol in Madison County on September 18, 2018, was undated. The physician's report attached in support of the cause of action against Dr. Nicol in the St. Clair County action is dated April 25, 2018, and is otherwise substantively identical to the report filed in Madison County.

emergency department records prior to her discharge on July 21, 2017, because he was concerned that Heather's condition had not been properly diagnosed. In addition, Dr. Kini noted that the plaintiffs' reviewing physician had examined the emergency department records and issued a written report on April 25, 2018, indicating Heather's injuries may have resulted from negligent medical care she received on July 21, 2017. Dr. Kini concluded that the cause of action against him was time barred because it was not filed until May 26, 2020, almost three years after the incident and more than two years after receiving the report of the reviewing physician. Dr. Kini also claimed that he was entitled to summary judgment because he had no physician-patient relationship with Heather and therefore did not owe her a duty of care.

¶ 17    Dr. Kini offered portions of the St. Joseph's Hospital emergency department records and excerpts from the depositions of Dr. Nicol, Chat Roberts, and Heather Roberts in support of his summary judgment motion. Dr. Nicol testified that he consulted with Dr. Kini about Heather's condition and her course of treatment on July 21, 2017. Dr. Nicol stated that he made a note of his consultation with Dr. Kini in Heather's medical record. He acknowledged that he did not document the content of his consultations with Dr. Kini in the patient's record. The emergency department records contain a reference to Dr. Kini as "Consultant (Kini (Neuro))." Dr. Nicol recalled that he talked to Chat Roberts on July 21, 2017. Dr. Nicol advised Chat that Heather was being evaluated for a stroke and that an MRI was recommended. Dr. Nicol indicated he would be conferring with a specialist for further guidance and recommendations. Dr. Nicol also recalled that he instructed Heather to follow up with Dr. Kini the next morning, and that this instruction was included in the written discharge instructions provided to Heather.

¶ 18    Chat Roberts testified that he arrived at the emergency department at approximately 1 p.m. on July 21, 2017. At that time, Chat learned that Heather was being evaluated for a stroke, that the

8

results of a CT scan were inconclusive, and that an MRI was needed. Chat spoke with Dr. Nicol after the MRI was completed. Dr. Nicol indicated that he was consulting with a specialist regarding the MRI results and the cause of Heather's condition. Chat testified that he learned the specialist was a neurologist sometime during the course of Heather's treatment at St. Joseph's Hospital or Barnes Jewish Hospital. Chat could not recall anyone identifying the specialist by name, but he acknowledged that Dr. Kini's name was clearly referenced in the discharge instructions. Chat testified that Dr. Nicol and another staff member reviewed the discharge instructions with Heather and him. Dr. Nicol instructed them that Heather should follow up with the specialist the next day. Before leaving the emergency department that evening, Chat requested a complete copy of Heather's medical records from the emergency department. At that time, Chat felt that Heather had suffered a stroke, that the emergency department physician did not diagnose it, and that something more should have been done. Heather testified that she remembered only bits and pieces of the emergency room visit. She recognized Dr. Kini's name from the medical records.

¶ 19   In addition, Dr. Kini offered excerpts from his discovery deposition, his responses to plaintiffs' interrogatories, and his affidavit as supporting exhibits. Therein, Dr. Kini stated that he was on staff at St. Elizabeth's Hospital in July 2017. At that time, he had an arrangement with St. Elizabeth's Hospital to take calls from physicians in the emergency departments of its sister hospitals, including St. Joseph's Hospital in Highland. Dr. Kini provided recommendations for patients with neurological issues, and he received a daily fee from the hospital for this service. Dr. Kini had no independent recollection of his consultation with Dr. Nicol on July 21, 2017. He did not keep records of his consultations with emergency department physicians, and he did not have a patient file on Heather. Dr. Kini testified that he never met or talked with Heather or her husband.

¶ 20    On August 7, 2024, the plaintiffs filed a response to Dr. Kini's motion for summary judgment. The plaintiffs claimed that there was a genuine question of fact regarding when they obtained sufficient information to put them on notice that Dr. Kini may have been a possible source of their injuries. They asserted that Dr. Nicol did not document Dr. Kini's involvement in Heather's medical record and that they only learned of the extent of Dr. Kini's role through discovery responses provided by Dr. Nicol in August 2019 and September 2019. Thus, they concluded that their claims against Dr. Kini were timely filed on May 26, 2020. In addition, the plaintiffs addressed Dr. Kini's contention that he owed no duty to them. The plaintiffs argued that under Illinois law, Dr. Kini's active and substantive participation in Heather's medical care and management created a professional duty of care. Finally, the plaintiffs argued that if the trial court found that their cause of action against Dr. Kini was time barred, then they should be granted leave to amend their complaint to allege that Dr. Kini should be equitably estoppel from asserting a limitations defense because his own conduct obscured the plaintiffs' knowledge of his active involvement in Heather's care.

¶ 21    On August 14, 2024, the trial court entered an order granting Dr. Kini's motion for summary judgment. The court noted that the statute of limitations for medical negligence is two years from the date the plaintiff knew or should have known of the injury and that it was likely wrongfully caused, and that the discovery rule delays the start of the limitations period until the plaintiff is aware of the injury and its likely cause. The court determined that the statute of limitations in this case began to run no later than April 25, 2018, the date that the plaintiffs' reviewing physician provided a written report stating that there was a reasonable and meritorious basis for a medical negligence action. The court found that the written report provided an analysis of Heather's medical condition and informed the plaintiffs of Heather's injury and its potential

10

wrongful cause. The court further found that Dr. Kini was named as the consulting neurologist in the records and that the plaintiffs had sufficient information to recognize that Dr. Kini's involvement could have contributed to Heather's injury. Given the circumstances and the applicable case law, the court concluded that the plaintiffs had sufficient information to investigate a potential action against Dr. Kini by April 25, 2018, and that the failure to file their action against Dr. Kini within two years of that date rendered the action time barred. The court denied the plaintiffs' request to amend the complaint to plead equitable tolling. The court found that the stringent requirements for equitable tolling were not satisfied because the plaintiffs had ample opportunity and information to identify Dr. Kini's involvement and to assert their claims against him within the statutory period. This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23     On appeal, the plaintiffs contend that the trial court erred in granting summary judgment in favor of Dr. Kini. The plaintiffs claim that the trial court misapplied the discovery rule and the statute of limitations in finding that their cause of action against Dr. Kini accrued at the same time as their cause of action against Dr. Nicol. They argue that there is a question of fact as to when their cause of action against Dr. Kini accrued.

¶ 24     Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). In deciding whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). A triable issue exists where the material facts are disputed or where the material facts are undisputed but reasonable

11

persons might draw different inferences from the uncontested facts. *Adams*, 211 Ill. 2d at 43. In appeals from summary judgment rulings, our review is *de novo*. *Adams*, 211 Ill. 2d at 43.

¶ 25 Section 13-212 of the Code provides in pertinent part that "no action for damages for injury or death against any physician, ***, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought." 735 ILCS 5/13-212 (West 2022). Under this section, a cause of action accrues, and the limitations period begins to run, when a person knows or reasonably should know of her injury and that it was wrongfully caused. *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 121; *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981). At that point the burden is on the injured person to inquire further as to the existence of a cause of action. *Witherell*, 85 Ill. 2d at 156.

¶ 26 The phrase "wrongfully caused" does not mean knowledge of a defendant's negligent conduct or knowledge of the existence of a cause of action. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415-16 (1981); *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 170-71 (1981). The statute of limitations begins to run when the aggrieved party becomes possessed of sufficient information concerning the injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. *Knox College*, 88 Ill. 2d at 416. The question of when a party knew or reasonably should have known of both the injury and that it was wrongfully caused is generally one of fact. *Witherell*, 85 Ill. 2d at 156. However, the question may be determined by the trial court as a matter of law when it is apparent from the undisputed facts that only one conclusion can be drawn. *Witherell*, 85 Ill. 2d at 156.

¶ 27 In this case, an objective analysis of the evidence in the record demonstrates that the plaintiffs had sufficient information about Heather's injury and its cause as of April 25, 2018, to

12

apprise a reasonable person of the need to conduct further inquiry into possible negligence of the specialist with whom Dr. Nicol consulted. According to the record, the plaintiffs' reviewing physician provided a written report, dated April 25, 2018, stating that he reviewed the emergency department records regarding Heather's care at St. Joseph's Hospital on July 21, 2017, and found there was a reasonable and meritorious basis for a medical negligence action against Dr. Nicol. The reviewing physician opined Dr. Nicol deviated from the standard of care by failing to timely evaluate Heather's neurological condition. At that time, the plaintiffs knew that Dr. Nicol had consulted a specialist for guidance and recommendations regarding Heather's condition. Dr. Nicol testified that he told Chat Roberts that he was consulting a specialist about Heather's condition, and Chat confirmed this testimony. An entry in the emergency department records documented the primary care practitioner's order for an MRI was "per recommendation of Neurologist at Belleville after evaluation of head CT to rule out stroke." A separate entry in the emergency department record identified Dr. Kini as the consultant in neurology. The discharge summary and written discharge instructions directed Heather to follow up with Dr. Kini. Dr. Nicol and another staff member reviewed the discharge instructions with the plaintiffs. In addition, the plaintiffs obtained a copy of Heather's emergency department records at the time Heather was discharged from the hospital on July 21, 2017. Chat testified that Dr. Kini's name was clearly referred to in the discharge instructions. Heather testified that she recognized Dr. Kini's name from the medical records. Thus, this is not a case where a second possible source of a plaintiff's injury was undiscoverable. The plaintiffs' contention that they only learned of the extent of Dr. Kini's role through discovery responses provided by Dr. Nicol on August 16, 2019, is not supported by the record.

¶ 28    Based upon our review of the record, the trial court did not misapply the discovery rule and the statute of limitations in determining that the plaintiffs' cause of action against Dr. Kini accrued no later than April 25, 2018. Because the plaintiffs' cause of action against Dr. Kini was not filed within two years of that date, it is time barred. Accordingly, the trial court did not err in granting summary judgment in favor of Dr. Kini, and that judgment is affirmed.

¶ 29    Affirmed.