THE CITY OF CARBONDALE, Plaintiff-Appellant, v. THE CITY OF MARION et al., Defendants-Appellees.

Fifth District No. 5—90—0156

Opinion filed March 22, 1991.

HARRISON, J., dissenting.

Don E. Prosser, of Gilbert, Kimmel, Huffman & Prosser, Ltd., of Carbondale, for appellant.

Michael M. Conway and John F. Zabriskie, both of Hopkins & Sutter, of Chicago, and Garrison & Speroni, of Marion (John Speroni, of counsel), for appellee City of Marion.

James B. Bleyer, of Bleyer & Bleyer, of Marion, and Husch, Eppenberger, Donohue, Cornfeld & Jenkins, of St. Louis, Missouri (Gregory R. Smith and Matthew D. Menghini, of counsel), for appellee Antonia-Marion, Inc.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

The City of Carbondale (Carbondale) brought an action in the circuit court of Williamson County against the City of Marion (Marion) and Antonia-Marion, Inc., seeking declaratory and injunctive relief. Carbondale sought to have Marion's plan to use tax increment financing to subsidize the development of a retail shopping mall declared illegal and an injunction prohibiting Marion and the developer, Antonia-Marion, from proceeding with the project. Both defendants filed motions to dismiss, arguing that Carbondale lacked standing to challenge the implementation of the plan. The trial court agreed and dismissed Carbondale's complaint. We affirm.

Carbondale and Marion are both municipal corporations located in southern Illinois, approximately 19 miles apart. Carbondale is located in Jackson County, and Marion is located in Williamson County. In July 1987, Marion adopted a redevelopment plan involving the use of tax increment financing pursuant to the Tax Increment Allocation Redevelopment Act (the Act) (Ill. Rev. Stat. 1985, ch. 24, par. 11—74.4—1 et seq.). One of the projects was a regional shopping mall. Prior to the trial court's decision, an ordinance was passed designating the

property upon which the mall is to be built a separate redevelopment project area.

In its complaint, Carbondale alleged, *inter alia*, that the property upon which the mall was to be built was not "blighted" within the meaning of the Act and that the use of tax increment funds to finance the project was therefore illegal. Carbondale also alleged that the University Mall, the only regional shopping mall within 60 miles, was located within its city limits, that the shopping mall proposed by Marion would compete directly with the University Mall, and that Carbondale would lose sales tax revenues in excess of $300,000 attributable to reduced retail sales if the defendants were allowed to proceed with their plan. Carbondale further alleged "on information and belief" that Marion and Antonia offered "TIF subsidies and revenues" to an anchor tenant in the University Mall to entice it to move to the new mall, that this tenant publicly indicated that it would be moving to the new mall, and that defendants could be "expected" to make similar attempts to lure other businesses away. The loss of this anchor tenant, Carbondale alleged, would result in the loss of $150,000 in sales tax receipts and an undetermined amount of property tax receipts.

The defendants filed motions to dismiss, challenging Carbondale's standing, and after a hearing on the motions, the trial court dismissed Carbondale's complaint. The court gave the following reasons for its decision:

1. The City of Carbondale failed to show standing under either the zone of interest or direct injury test, whether the tests are applied separately or together.

2. Allowing Carbondale standing to sue under the circumstances would invite intercity warfare, which is contrary to public policy.

3. Carbondale's real argument was with the Act itself and the philosophy behind it.

4. Any allegedly improper or illegal actions on the part of Marion would still be subject to challenge by any number of individuals or entities, such as Marion taxpayers, landowners, or residents. The court indicated that these were the types of entities or persons who would suffer the type of direct injury contemplated by the courts.

5. There is no law insulating one city from competition of another where, by implementation of a State statute, the latter derives an economic advantage over the former.

6. It would be poor public policy to allow one municipality to challenge another's attempts to utilize State statutes applicable to all municipalities.

This appeal followed.

■ Our supreme court examined the doctrine of standing in *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 524 N.E.2d 561. In *Greer*, our supreme court considered whether Illinois should adopt the "zone of interest" test as an additional requirement of standing. The zone of interest test requires that a plaintiff show that the interest he asserts lies within the zone of interests sought to be protected by the statute in question. The court in *Greer* held that "standing in Illinois requires only some injury in fact to a legally cognizable interest." (*Greer*, 122 Ill. 2d at 492, 524 N.E.2d at 574-75.) The court went on to hold that "the claimed injury, whether 'actual or threatened' [citation], must be: (1) 'distinct and palpable' [citation]; (2) 'fairly traceable' to the defendant's actions [citation]; and (3) substantially likely to be prevented or redressed by the grant of the requested relief [citations]." *Greer*, 122 Ill. 2d at 492-93, 524 N.E.2d at 575.

■ ■ Carbondale argues on appeal that the trial court abused its discretion in granting the motion to dismiss. Whether to grant a motion to dismiss is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. (*Knox College v. Celotex Co.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.) Carbondale maintains that it has set forth a distinct and palpable injury in the form of lost sales and property tax receipts. Defendants argue, however, that the only persons or entities who would have a right to challenge Marion's use of tax increment financing are the taxing bodies who otherwise would be entitled to the incremental tax revenue and the citizens who pay the taxes. Defendants further argue that Carbondale's "injury" would be the result of economic competition and that freedom from competition is not a legally cognizable right. With respect to Marion's first argument, Carbondale clearly would not be entitled to the incremental tax revenue generated by the redevelopment area, nor is it a Marion taxpayer. Carbondale's claim of "injury" is based solely on lost sales tax revenue from businesses at the University Mall, and the possibility that some businesses located there would relocate to the new mall in Marion, resulting in lost real estate tax receipts. These alleged injuries are not sufficient to confer standing. With respect to the lost sales tax receipts, Marion's purportedly illegal use of tax financing to subsidize the mall would not be the cause of Carbondale's injury. The injury would be the result of

decreased sales which would in turn be the result of increased economic competition. This injury is remote and not, in our judgment, fairly traceable to the defendants' conduct. (See *Simon v. Eastern Kentucky Welfare Rights Organization* (1976), 426 U.S. 26, 48 L. Ed. 2d 450, 96 S. Ct. 1917.) Were this allegation of injury sufficient to confer standing, then any individual or entity which derived income from the sales activities of businesses located in the University Mall would likewise have standing to challenge the redevelopment project. To grant standing based upon such "injury," we would have to give the phrases "distinct and palpable injury" and "fairly traceable to the defendant's actions" interpretations of such sweeping breadth as to render them meaningless.

■ As to the allegation of injury based upon lost property tax receipts, we do not find such injury to be "distinct and palpable." Carbondale alleged that "upon information and belief" defendants offered one of the anchor tenants in the University Mall incentives in the form of relocation costs and rent accommodations to be paid with tax increment financing to entice it to move, and could be "expected" to offer the same incentives to other businesses. Even accepting these statements as true, they hardly set forth a "distinct and palpable" injury. Carbondale does not allege that the anchor tenant left because of incentives offered by the defendants, or that the defendants are even offering incentives to other businesses. This alleged "injury" is speculative at best and affords Carbondale no standing to challenge the redevelopment project.

Carbondale cites *Village of Barrington Hills v. Village of Hoffman Estates* (1980), 81 Ill. 2d 392, 410 N.E.2d 37, for the proposition that one city may challenge the decisions of another where the actions of the defendant city would cause loss of revenue and special damages affecting the plaintiff city's governmental operations. In that case, Barrington Hills objected to Hoffman Estate's rezoning of certain property to permit construction of an open-air music theater. The damages alleged in that case were increased municipal outlays for more police manpower and squad cars to monitor traffic congestion, the expense of clearing litter which would result from the crowds, increased noise from the music and crowds, and lost real estate taxes resulting from a diminution in property values. The court in *Barrington Hills* found that the plaintiff municipality had standing because these effects "portend direct, substantial and adverse effects upon the plaintiff municipalities in the performance of their corporation obligations." (*Barrington Hills*, 81 Ill. 2d at 398, 410 N.E.2d at 40.) These effects, unlike the alleged injuries in the present case, are

the types of "distinct and palpable" injuries contemplated by the *Greer* court, injuries which are the direct consequence of the defendant city's actions. We note that one of the effects mentioned by the *Barrington Hills* court was lost real estate taxes resulting from diminution in property value of the property near the theater. Diminution of property value is a legally cognizable interest. (*Greer*, 122 Ill. 2d at 493, 524 N.E.2d 575.) Although Carbondale also alleges that it will lose an undetermined amount of property tax revenues, such allegation is based only upon the speculation that business entities will leave the University Mall. It does not allege that the value of the University Mall property will be diminished. The diminution of property value and corresponding loss of tax revenues is both speculative and remote.

■■ Carbondale also argues that the court erred in finding that Carbondale was outside the "zone of interest" of the Act and therefore lacked standing. Carbondale maintains that the "zone of interest" test is not a requirement of standing in Illinois. As we indicated above, Carbondale is correct in this assertion. The trial court did not, however, dismiss Carbondale's complaint based solely on its failure to meet the "zone of interest" requirement. The trial court also found that Carbondale failed to show any injury in fact to a legally cognizable interest. The trial court specifically stated Carbondale failed to demonstrate standing under either the direct injury or zone of interest test and that regardless of which theory was employed, Carbondale could not show standing to challenge the actions of the defendants. Carbondale argues that it falls within the Act's "secondary protections" and so meets the zone of interest test. We note, however, that the "zone of interest" requirement was not considered by the court in *Greer* as a separate theory of standing, but as an additional requirement in cases involving a statute or regulation. The trial court's finding that Carbondale failed to demonstrate a direct injury was therefore dispositive of defendant's motions to dismiss, and our conclusion that Carbondale has shown no injury to a legally cognizable interest is dispositive of this appeal.

■■ Carbondale's final argument is that public policy requires reversal of the trial court's decision. Carbondale maintains that Marion is using illegal tax subsidies to engage in unlawful economic competition, and that by denying it standing to challenge the redevelopment project, the trial court has denied Carbondale the right to seek redress for the injury it has suffered. This argument begs the question. The "injury" Carbondale alleges to have suffered is to an interest which is not legally cognizable as Carbondale is neither a resident nor

taxpayer of Marion. Further, we believe, as did the trial court, that public policy considerations militate against granting Carbondale standing. If adverse economic impact alone were found to be sufficient grounds for standing to challenge the use of tax subsidies, even though that use may be improper, the result would spawn a torrent of litigation and foster a climate ripe for economic warfare between competing municipalities.

We note further that the allegedly improper use of TIF tax subsidies will not go unchallenged. In Castel Properties v. City of Marion, No. 89—CH—2, an action pending in Williamson County, certain Marion taxpayers are challenging the redevelopment plan. Castel Properties itself is owned by Heitman Financial, Ltd., a Chicago-based company with a financial interest in the University Mall. Castel Loan Corp. was formed for the purpose of purchasing property in Marion so it could intervene.

Carbondale fails to demonstrate a distinct and palpable injury to any legally cognizable interest and therefore does not have standing to challenge the redevelopment project.

For the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

WELCH, J., concurs.

JUSTICE HARRISON, dissenting.

The majority holds that the City of Carbondale's complaint was properly dismissed because it did not adequately allege facts which, if true, would establish that Carbondale had standing to bring this action. In so doing, the majority assumes that the burden of alleging standing lay with Carbondale. This is not so. Under our supreme court's ruling in *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 494, 524 N.E.2d 561, 575, Carbondale had no burden to plead and prove standing. Rather, it was defendants' burden to plead and prove lack of standing.

There is nothing in the allegations in Carbondale's complaint which would entitle defendants to the judgment that Carbondale lacks standing to bring this action. To the contrary, I believe that those allegations are sufficient to show that such standing exists. Carbondale avers that the illegal use of tax financing to subsidize the proposed regional shopping mall will result in a substantial decline in its tax revenues because the new mall will lure customers and merchants

from an existing mall located within the city's boundaries. In making this plea, Carbondale does not claim that it is entitled to be protected from competition as such. Its point, rather, is that it should not be forced to suffer the adverse economic effects of a competition made possible only through violation of State law. Such adverse economic consequences are, in my view, no less distinct and palpable an injury and are no less traceable to the defendants' actions than the damages alleged in *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 524 N.E.2d 561, and *Village of Barrington Hills v. Village of Hoffman Estates* (1980), 81 Ill. 2d 392, 410 N.E.2d 37.

The majority contends that Carbondale cannot be said to have sustained injury to a legally cognizable right because it is neither a resident nor a taxpayer of Marion. In advancing this position, the majority has, in effect, embraced the very "zone-of-interests" test which our supreme court expressly declined to adopt in *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 491-92, 524 N.E.2d 561, 574.

The majority also attempts to make much of the fact that the economic injury feared by Carbondale remains speculative. Our supreme court has made quite clear, however, that a party need not have sustained actual damage before being entitled to bring suit and that the lack of immediate, ascertainable damages is not itself a barrier to the grant of declaratory and injunctive relief. Allegations that an injury is threatened will suffice. 122 Ill. 2d at 493-94, 524 N.E.2d at 575.

The majority's "public policy" analysis is similarly flawed. Under Illinois law, standing requires only some injury in fact to a legally cognizable interest, and the claimed injury must be (1) distinct and palpable, (2) fairly traceable to the defendant's actions, and (3) substantially likely to be prevented or redressed by the grant of the requested relief. (122 Ill. 2d at 492-93, 524 N.E.2d at 575.) These are the factors we must consider. Where, as here, those factors are adequately alleged, it seems to me that, by definition, public policy mandates that a plaintiff be permitted to pursue his cause of action.

The majority raises the spectre of "torrents" of litigation which will follow if standing is found here, but we should not look for a way around the law simply because we are concerned that other litigation involving other litigants may result. If those litigants have also been injured, they, too, are entitled to seek redress, and it is the obligation of the courts of this State to hear their complaints. We exist to resolve disputes, not to avoid them.

The majority asserts that if Carbondale were permitted to proceed, the result would "foster a climate ripe for economic warfare be-

878

tween competing municipalities." Even if there were some basis in the record for this claim, and there is not, I could not understand the majority's concern. I have always thought that competition between economic rivals was supposed to be a good thing. In any case, I scarcely see how fostering competition can possibly harm the public interest when it results from enforcement of State law.

The majority attempts to find solace for its result in the fact that another action by different plaintiffs is now pending in the same circuit court for the same wrongful conduct alleged here. The existence of this second action raises the possibility that the litigation could be consolidated into a single proceeding, but I do not understand how it bears on the issue of Carbondale's standing. Nothing in the Illinois law of standing, indeed, no principle of American jurisprudence, sanctions the abridgement of a party's right to seek redress for a legally cognizable injury simply because other injured parties have also sued for the same wrong.

For the foregoing reasons, I would reverse the judgment of the circuit court and remand to permit Carbondale to proceed with its cause of action.