THE DEPARTMENT OF PUBLIC AID ex rel. GLENNA MOUTRIA, Petitioner-Appellant, v. KENNETH ROACH, Respondent-Appellee.—THE DEPARTMENT OF PUBLIC AID ex rel. THE STATE OF MISSOURI et al., Petitioners-Appellants, v. KENNETH ROACH, Respondent-Appellee.

Fifth District   Nos. 5—93—0100, 5—93—0101 cons.

Opinion filed March 17, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Robert G. Toews, Assistant Attorney General, of counsel), for appellant.

Ralph T. Stenger, of Law Offices of Ralph T. Stenger, of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

In May of 1992, the Illinois Department of Public Aid (Department) filed an action on behalf of Glenna Moutria to determine the paternity of Moutria's son, Keith, a minor child. The petition sought a declaration that Kenneth Roach is Keith's father and an order requiring Roach to pay for Keith's support. The Department also sought to recoup the public aid benefits paid to Moutria for Keith's support. Five months after this petition was filed, the Department filed a second paternity action against Kenneth Roach on behalf of the State of Missouri and Missouri resident Connie Barton. This petition alleged that Roach is the father of Barton's son, Kenneth. The petition requested relief similar to that sought in the Moutria petition, an order requiring Roach to pay for Kenneth's support, and reimbursement of Missouri public aid benefits paid to Barton.

Kenneth Roach filed motions to dismiss both petitions. He argued that the doctrines of *laches* and estoppel apply because the children were both 17 years old when the paternity actions were filed. He argued that the lengthy delay in bringing the paternity actions violated his due process and equal protection rights. The trial court granted the motions to dismiss. The Department appeals. This court consolidated the cases for this appeal. We reverse.

Roach argues that the trial court properly dismissed the petitions because of the inordinate delay in prosecuting the claims against him. He points out that before the filing of these petitions in 1992, the Department had filed similar petitions against him in 1988 and in 1989. The earlier petitions were voluntarily dismissed. Attached to respondent's brief are copies of said purported petitions, and the Department does not challenge their accuracy. It is the respondent's position that when the State chose to voluntarily dismiss these paternity claims near the end of the limitations period, the State waived its right to prosecute the claims anew and is barred from doing so.

There is no dispute that the Department was within the statutory limitations period in filing the petitions in this case because both minors were receiving public aid benefits at the time the petitions were filed.

> "An action brought by or on behalf of a child shall be barred if brought later than 2 years after the child reaches the age of majority; however, if the action on behalf of the child is brought by a public agency, it shall be barred 2 years after the agency has ceased to provide assistance to the child." 750 ILCS 45/8(a)(1) (West 1992).

The question on appeal is whether the circuit court erred in dismissing the petitions because it concluded that respondent's due process rights were compromised. Procedural due process mandates that a party be afforded notice and an opportunity to be heard and to conduct a defense. (*In re Marriage of Blaisdell* (1986), 142 Ill. App. 3d 1034, 1044, 492 N.E.2d 622, 628.) The United States Supreme Court discussed procedural due process in *Little v. Streater* (1981), 452 U.S. 1, 68 L. Ed. 2d 627, 101 S. Ct. 2202:

> "Due process, 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' [Citation.] Rather, it is 'flexible and calls for such procedural protections as the particular situation demands.' *** '[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process

must be given a meaningful opportunity to be heard.' " (*Little*, 452 U.S. at 5, 68 L. Ed. 2d at 632, 101 S. Ct. at 2205, quoting *Boddie v. Connecticut* (1971), 401 U.S. 371, 377, 28 L. Ed. 2d 113, 118, 91 S. Ct. 780, 785.)

The procedural safeguards mandated by due process in a particular case vary, depending upon:

"(1) the significance of the private interest which will be affected by the official action, (2) the risk of the erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards, and (3) the significance of the State interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural safeguards would entail." *People v. Orth* (1988), 124 Ill. 2d 326, 334, 530 N.E.2d 210, 214.

The first factor in the due process equation, the importance of the private interest in a paternity action, is significant. Establishing paternity creates a parent-child relationship which before then was legally nonexistent. The knowledge that one is or is not the father of a child can have a profound emotional impact on the parties, whether that impact is positive or negative. Moreover, substantial support obligations attach when a parent-child relationship is established, and these impose upon the respondent to a paternity action a fiscal burden which before then was nonexistent.

The second factor, the risk of an erroneous deprivation of such interest, in this case an erroneous finding of paternity, is minimal. Section 11 of the Illinois Parentage Act of 1984 provides that either party to a paternity action may request blood testing for the mother, child, or alleged father to determine inherited characteristics; in addition, any party may demand that other experts, qualified as examiners of blood or tissue types, may perform independent tests under order of court, the results of which may be offered in evidence. (750 ILCS 45/11(a), (b), (c) (West 1992).) We note that the Act sets forth the evidentiary relevance of blood and tissue test results:

"(1) If the court finds that the conclusion of all the experts, as disclosed by the evidence based upon the tests, is that the alleged father is not the parent of the child, the question of paternity shall be resolved accordingly.

(2) If the experts disagree in their findings or conclusions, the question shall be weighed with other competent evidence of paternity.

(3) If the blood or tissue tests show that the alleged father is not excluded and that the combined paternity index is less than 500 to 1, this evidence shall be admitted by the court and shall be weighed with other competent evidence of paternity.

(4) If the blood or tissue tests show that the alleged father is not excluded and combined paternity index is at least 500 to 1, the alleged father is presumed to be the father, and this evidence shall be admitted. This presumption may be rebutted by clear and convincing evidence.

(5) Any presumption of parentage as set forth in Section 5 of this Act is rebutted if the court finds that the conclusion of the experts excludes paternity of the presumed father." (750 ILCS 45/ 11(f) (West 1992).)

Increasingly sophisticated tests for genetic markers permit the exclusion of over 99% of those who might be accused of paternity, regardless of the age of the child. (*Clark v. Jeter* (1988), 486 U.S. 456, 100 L. Ed. 2d 465, 108 S. Ct. 1910.) Because of the accuracy of modern blood tests, the risk that a putative father will be erroneously adjudicated as the father is greatly reduced. *Little*, 452 U.S. at 14, 68 L. Ed. 2d at 637, 101 S. Ct. at 2209.

Notwithstanding the accuracy of the scientific evidence in such cases, respondent contends that because the State waited so long before prosecuting the claims against him, evidence he might have been able to present had the State been diligent in filing the claims has become stale or is no longer available. We note that respondent's accusation is in the form of a general complaint and is not supported with specific instances of how he has been prejudiced. For instance, respondent makes no attempt to name witnesses who may have been able to testify in his defense or to describe evidence that is no longer available which may have bolstered his defense.

The third factor to consider in evaluating the procedural safeguards mandated by due process in a paternity case concerns the government's interest. The purpose of a paternity action is to convert a father's moral obligation to support his illegitimate children into a legal obligation and to prevent such children from becoming public charges. (*Department of Public Aid ex rel. Evans v. Lively* (1993), 246 Ill. App. 3d 216, 223, 615 N.E.2d 1381, 1386; *Dornfeld v. Julian* (1984), 104 Ill. 2d 261, 266, 472 N.E.2d 431, 433.) The State has a significant interest in securing support for children receiving financial assistance. (*Little*, 452 U.S. at 14, 68 L. Ed. 2d at 637, 101 S. Ct. at 2209-10; *Dornfeld v. Julian* (1984), 104 Ill. 2d 261, 266, 472 N.E.2d 431, 433; *Department of Public Aid ex rel. Skelton v. Liesman* (1991), 218 Ill. App. 3d 437, 441, 578 N.E.2d 310, 312.) This interest includes recouping sums expended for the child's support. (*Skelton*, 218 Ill. App. 3d at 441, 578 N.E.2d at 312.) Legislative common sense dictates that if parents do not support their children, an already strained State welfare system must do so. (*Department of Public Aid ex rel.*

*Cox v. Miller* (1992), 146 Ill. 2d 399, 412, 586 N.E.2d 1251, 1257.) Moreover, the Illinois Parentage Act of 1984 declared it to be the public policy of Illinois to recognize the right of every child to the physical, mental, emotional, and monetary support of his or her parent. 750 ILCS 45/1.1 (West 1992).

■ We cannot find that the procedures utilized in this case amounted to a constitutional violation of respondent's due process rights. The sophisticated tests used to determine paternity coupled with the State's interests in seeking support from responsible parties and reducing the number of public charges outweigh respondent's private concerns. Respondent was notified of the charges against him, he had an opportunity to prepare a defense, and he was given an opportunity to be heard. While certain evidence may have been less available given the years that have passed since the conceptions, respondent offers no clue as to what such evidence may have proven, and the most reliable evidence, the blood test, is still available. The accuracy of modern blood testing and the State's interest in curbing the strain on its welfare system outweigh the respondent's burden of having to pay a potentially substantial sum.

Whether to grant a motion to dismiss is within the sound discretion of the trial court, and its decision will not be disturbed on appeal absent an abuse of that discretion. (*City of Carbondale v. City of Marion* (1991), 210 Ill. App. 3d 870, 873, 569 N.E.2d 290, 292; *Gable v. Reznick* (1989), 183 Ill. App. 3d 171, 173, 538 N.E.2d 1325, 1326.) Based on our analysis, we must reject the respondent's argument that we should bar these paternity actions. We conclude that the trial court abused its discretion in granting respondent's motions to dismiss. Accordingly, we reverse the January 6, 1993, and January 19, 1993, orders of the circuit court of Jackson County and remand this cause for further proceedings consistent with our decision.

Reversed and remanded.

LEWIS, P.J., and RARICK, J., concur.