GILBERT BROTHERS, INC., Plaintiff-Appellant, v. MARY HELEN GILBERT *et al.,* Defendants-Appellees.

Fourth District    No. 4—93—0511

Argued December 14, 1993.—Opinion filed March 3, 1994.—Rehearing denied April 5, 1994.

Lawrence E. Johnson and Catherine H. Barbercheck (argued), both of Champaign, for appellant.

L. Keith Hays (argued), of Monticello, for appellee Mary Helen Gilbert.

Brian L. McPheters (argued), of Hatch, Blockman, McPheters & Like, of Champaign, for appellee Stephen Gilbert.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Gilbert Brothers, Inc. (Company), filed an action against Mary Helen Gilbert and her son, Stephen Gilbert, as trustee of the Mary Helen Gilbert trust, for fraudulent transfer of funds. Counts I and II of the complaint alleged the violation of the Uniform Fraudulent Transfer Act (Act) (Ill. Rev. Stat. 1991, ch. 59, par. 101 *et seq.*) and counts III and IV of the complaint alleged a violation of common law fraud. The trial court dismissed the action with prejudice, after allowing two amended complaints, as barred by the applicable statute of limitations. The Company appealed. The issue before the court is whether the trial court erred in dismissing the action as barred by the statute of limitations. We affirm the trial court's dismissal of the complaint.

The current action is a suit filed by the Company to recover funds allegedly fraudulently transferred by the Gilberts. A complete factual background can be found in *Hannah v. Gilbert* (1990), 207 Ill. App. 3d 87, 565 N.E.2d 295.

On April 6, 1981, Richard L. Hannah filed an action against Wilbur (Nick) Gilbert and his son, Stephen, for breach of a noncompetition clause in a contract with the Company. On March 8, 1982, Nick was found incompetent and his wife, Mary Helen Gilbert, was appointed guardian of his estate and his person. A jury verdict for Hannah was entered and Nick posted a certificate of deposit (CD) in the name of Nick and/or Helen Gilbert in the amount of $150,000 pending appeal. The appellate court reversed the trial court on January 21, 1985, holding that the Company, rather than Hannah, was the proper party to bring the action. On March 8, 1986, the claim was refiled by the Company. On February 2, 1990, the jury returned a verdict in favor of the Company.

The Company filed the complaint in this action on August 11, 1992. On September 23, 1992, the trial court granted the Gilberts' motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). The Company filed its first-amended complaint on October 22, 1992. On February 22, 1993, the trial court once again granted the Gilberts' motion to dismiss. On March 23, 1993, the Company filed its second-amended complaint. The trial court, this time, dismissed the action pursuant to section 2—619(a)(5) of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(5)), without leave to refile, after examining additional exhibits filed by the Company and arguments filed by counsel.

The Company's second-amended complaint contained four counts. Counts I and II were against Stephen, as trustee, and Helen, respectively, for fraudulent transfer of funds pursuant to the Act. Counts III and IV were against Stephen, as trustee, and Helen, respectively, for common law fraudulent conveyance. The Company's complaint alleged that on February 25, 1985, Nick was the owner of a CD and that on March 13, 1985, Nick transferred ownership to his wife. The copy of the CD attached to the complaint clearly shows, however, that it was in both Nick's and Helen's names. Helen then transferred the CD to Stephen as trustee for the Mary Helen Gilbert trust. On February 20, 1990, a judgment was entered for the Company against Nick, but it has not been paid. The complaint further alleged that the conveyance of the CD was fraudulent in that at the time of the conveyance Nick expected that he would be subject to a lawsuit by the Company, that judgment might be rendered against him in favor of the Company, and that the conveyance was made to prevent the judgment from becoming a lien on the property with the intent of defrauding, delaying, or hindering the Company. Helen and Stephen received the conveyance with knowledge of Nick's purpose and with the intent to aid him. The conveyance did impair the rights of the Company in that it left Nick with no money from which to pay the judgment. Between the time the judgment was issued on January 25, 1991, and September 20, 1991, the Company examined various county records, reviewed documents, subpoenaed account information from banks, and filed a memorandum of judgment. The complaint states that it was filed within one year after the transfer was discovered and such time of discovery was reasonable. In response to the last motion to dismiss, the Company submitted the following exhibits to the trial court: the bond certificate issued on January 14, 1983, after the judgment in the first trial; the final report of guardian filed March 20, 1987; the order discharging the guardian filed on March 30, 1987, and the suggestion of death of a party filed May 11, 1987, which included the statements that Nick had died on November 26, 1986, that he left no estate to pass by probate, and his real estate and bank deposits would pass to his surviving joint tenant.

The trial court dismissed counts I and II as having been extinguished pursuant to section 10(a) of the Act (Ill. Rev. Stat. 1991, ch. 59, par. 110(a)) and counts III and IV as not having been timely filed pursuant to the general five-year statute of limitations. The Company appealed.

The trial court dismissed the entire complaint pursuant to section 2—619(a)(5) of the Code. (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(5).) Like a motion for summary judgment, a section 2—619 motion may

raise questions of fact to be resolved by the trial court, but the trial court may not resolve disputed factual issues without an evidentiary hearing. (*Michel v. Gard* (1989), 181 Ill. App. 3d 630, 635, 536 N.E.2d 1375, 1379, citing *Consumer Electric Co. v. Cobelcomex, Inc.* (1986), 149 Ill. App. 3d 699, 703-04, 501 N.E.2d 156, 159.) In *University of Illinois v. Continental Casualty Co.* (1992), 234 Ill. App. 3d 340, 343, 599 N.E.2d 1338, 1341, this court discussed the standard of review in summary judgment cases as follows:

> " 'The entry of summary judgment is not a matter within the discretion of the trial court. In reviewing a trial court's ruling on a motion for summary judgment, the appellate court should consider anew the facts and law related to the case and determine whether the trial court was correct.' (*Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167.)"

In cases involving a section 2—619 motion to dismiss, a reviewing court must also review anew the pleading attacked and the documents filed in support of and in opposition to the motion. In ruling on a motion to dismiss, the court may consider all reasonable inferences which may be drawn from the alleged facts, but mere conclusions of law and unsupported conclusions of fact are not to be considered. *Campbell v. White* (1991), 207 Ill. App. 3d 541, 548, 566 N.E.2d 47, 51.

This court in prior cases has followed the abuse of discretion standard in reviewing orders on motions to dismiss. (*Dick v. Peoples Mid-Illinois Corp.* (1993), 242 Ill. App. 3d 297, 303, 609 N.E.2d 997, 1002.) Discretion permits a judge to review the facts, if any submitted, as well as the law and to make one of two choices. As in this case, the question is whether to grant or deny the motion. If the facts and law permit only one conclusion, there is no discretion. In this case, the facts and law permit only one conclusion. The granting of the section 2—619 motion was correct as a matter of law. This is consistent with our recent decision as to the standard of review on summary judgment motions.

The trial court dismissed counts I and II of the claim filed under the Act because they failed to meet its statute of limitations. The Company argues that the running of this limitations period should not have begun until its actual discovery of the transfer of funds, with the result that the action was timely filed. The Company argues that it only came to actually know of the fraudulent transfer in 1991 and then filed the complaint within one year after it discovered the transfer so as to meet the requirements of section 10(a) of the Act. The Gilberts maintain that the Company should have known of the transfer shortly after it occurred through the discovery process in the related case and documents that had been filed in that case.

■ Section 10(a) of the Act provides that a cause of action for the fraudulent transfer of an obligation under this act is extinguished unless it is brought within "4 years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." (Ill. Rev. Stat. 1991, ch. 59, par. 110(a).) Because the transfer was made in 1985, more than four years before the action was filed, the Company is relying on the second half of the statute and asserting that the action was filed within one year after the transfer was actually discovered.

■ An action brought under the fraudulent conveyance act is time barred unless the complaint contains an explanation of why discovery of the alleged fraud could not have occurred prior to the expiration of the limitations period. (*In re Heartland Chemicals* (C.D. Ill. 1989), 103 Bankr. 1012 (this case was decided under the predecessor statute (Ill. Rev. Stat. 1987, ch. 59, par. 4).) The language "within one year after the transfer or obligation was or could have been reasonably discovered by the claimant" is a reiteration of the discovery rule as stated in *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976. In *Knox College*, the court stated that the effect of the discovery rule is to postpone the starting of the statute of limitations until a party knew or should have known of his injury. (*Knox College*, 88 Ill. 2d at 414, 430 N.E.2d at 979.) The court clarified that the event which triggers the running of the statute of limitations is not the first knowledge the injured person has of his injury, and, at the other extreme, it is not the acquisition of the knowledge that one has a cause of action against another; rather, the statute starts to run when a person knows or reasonably should know of his injury and that it was wrongfully caused. (*Knox College*, 88 Ill. 2d at 415, 430 N.E.2d at 980; see also *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874; *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868.) Furthermore, once a person knows or should know of his injury, he has the duty to make a diligent inquiry into whether a cause of action lies. *Knox College*, 88 Ill. 2d at 416, 430 N.E.2d at 980.

■ The Company's argument that the one-year period should begin to run on September 20, 1991, is unpersuasive. First, the complaint does not allege specifically when the transfer was discovered, although the Company states in its brief that it was discovered because of a subpoena returnable on September 20, 1991.

Second, the complaint does not allege why the transfer was discovered so late and why the Company could not have reasonably made the discovery earlier. The complaint only makes the conclusory statement that the discovery was reasonable.

Third, the Company in its brief admits that it had the knowledge on May 11, 1987, because of the suggestion of death that was filed, that Nick's real estate and bank holdings were to be transferred to his surviving joint tenant and he had no estate to pass by probate. The Company at this time should have reasonably known, at the very least, that a possible cause of action may have existed for fraudulent transfer of funds and it should have investigated further. It should also be noted that no probate proceedings were instituted by the Company following Nick's death in 1986.

Since the Company reasonably should have known of a possible injury wrongfully caused after the suggestion of death, the statute of limitations had run by the time the Company filed its complaint some three years later. Consequently, the trial court did not err in dismissing the second-amended complaint.

Moreover, apart from the dismissal, the Company's claim is moot because the Company alleges that Nick, as a joint tenant, fraudulently transferred his interest to the other joint tenant, his wife, and then he died. Assuming the Company was successful on the merits of its claim for fraudulent transfer, the court would reinstate the property as it was at the time prior to the fraudulent transfer. Because Nick's death occurred prior to any judgment received by the Company, the property would have transferred to the surviving joint tenant at that time of death, extinguishing any rights the Company may have had.

■ The trial court also dismissed counts III and IV, alleging a common law action in fraud, based on the general five-year statute of limitations (Ill. Rev. Stat. 1991, ch. 110, par. 13—205). The Company argues that (1) the cause of action did not arise until its discovery of the transfer of funds so that five years had not yet passed, or (2) rather than the five-year period, the statute for fraudulent concealment should be applied (Ill. Rev. Stat. 1991, ch. 110, par. 13—215), thereby extending the statute of limitations. The Gilberts maintain that the trial court correctly dismissed the complaint. The Company again argues that because of the discovery rule, the statute of limitations should not have started running until sometime in 1991, when it actually discovered the transfer. We find the section 10(a) analysis above equally applicable here. Since the Company reasonably should have known of a possible injury wrongfully caused after the suggestion of death, the statute of limitations had run by the time it filed its complaint some three years later. Consequently, the trial court did not err in dismissing these counts of the second-amended complaint.

Because the Company failed to take action to discover the fraud-

ulent transfer after it should have reasonably known that some injury may have wrongfully occurred, the statute of limitations ran on its cause of action. We, therefore, affirm the trial court's dismissal of the second-amended complaint.

Affirmed.

COOK and LUND, JJ., concur.