THIRD DIVISION
October 25, 2006

No. 1-06-0609

| | | |
|---|---|---|
| MONICA M. GAYTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | 04 CH 04550 |
| | ) | |
| LOUIS E. KOVANDA, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Philip L. Bronstein, |
| | ) | Judge Presiding. |
| | ) | |

JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff Monica Gayton filed suit against defendant Louis Kovanda to quiet title. Kovanda filed a counterclaim alleging that Gayton violated the Illinois Uniform Fraudulent Transfer Act  (740 ILCS 160/1 *et seq*. (West 2002)) (Act).   Gayton then filed a motion for summary judgment on Kovanda's counterclaim, which was granted. Kovanda now appeals from the court's order granting summary judgment in favor of Gayton and argues summary judgment was improper.    For the following reasons, we affirm.

BACKGROUND

The following facts are undisputed. Monica and Joseph Gayton, husband and wife, held title to the property commonly known as 3524 Riverside Drive, Wilmette, Illinois (hereinafter the property), as joint tenants with rights of survivorship.  On February 2, 2001, Joseph transferred his interest in the property via a quitclaim deed to his wife Monica.

Louis Kovanda was a creditor of Joseph Gayton and had a judgment of $414,000, plus court costs, entered in his favor against Joseph Gayton on November 20, 2003 (Kovanda v. Gayton, No. 03L009656, Cook Cnty. Cir. Ct.).  Joseph Gayton died on November 26, 2003.  Kovanda recorded the notice of judgment against title to the Wilmette property on December 3, 2003.

On March 15, 2004, Monica Gayton  filed an action in the circuit court of Cook County against Kovanda to quiet title to the property.  Monica alleged that Kovanda had created a cloud on title by wrongfully recording the judgment as a lien against the property because she was the sole owner of the property and the judgment was against Joseph, who no longer had an interest in the property.  Monica filed a motion for summary judgment on October 28, 2004, seeking an order forcing Kovanda to release the lien.

On October 13, 2004, Kovanda filed an answer to Monica's complaint and a counterclaim wherein he alleged that Joseph's transfer of his interest in the property to Monica violated the Illinois Uniform Fraudulent Transfer Act (740 ILCS 160/1 *et seq*. (West 2002))  Thereafter, on December 23, 2004, Kovanda voluntarily agreed to record

2

a release of his judgment lien. Also on December 23, 2004, Monica withdrew the motion for summary judgment she had filed on October 28, 2004.

On February 23, 2005, Monica filed an amended complaint for slander of title wherein she alleged again that Kovanda had improperly recorded the judgment lien against the property.

Monica filed a motion for summary judgment as to Kovanda's counterclaim on September 26, 2005. On December 7, 2005, the trial court granted Monica's motion for summary judgment as to Kovanda's counterclaim. On January 31, 2006, Monica voluntarily dismissed her complaint for slander of title.

Kovanda filed a notice of appeal on February 28, 2006, seeking review of the trial court's order granting summary judgment to Monica as to his counterclaim.

ANALYSIS

Kovanda argues that the trial court erred in granting summary judgment in favor of Gayton as to his counterclaim for violation of the Act.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179,186 (2002). Whether a genuine issue of material fact exists is determined from the pleadings, depositions, affidavits and admissions on file in a case. *Komater v. Kenton Court Associates*, 151 Ill. App. 3d 632, 636 (1986). Summary judgment may be granted in any case where an issue of fact is raised if, after viewing the evidence in the light most favorable to the plaintiff, the trial court concludes

3

that no liability exists as a matter of law. *McCann v. Bethesda Hospital*, 80 Ill. App. 3d 544 (1979). An order granting summary judgment should be reversed only if the evidence shows that a genuine issue of material fact exists or the judgment was incorrect as a matter of law. *In re Estate of Herwig*, 237 Ill. App. 3d 737, 741 (1992). Our review of an order granting summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

In her motion for summary judgment, Gayton argued that even if Joseph's transfer of his interest in the property was fraudulent pursuant to the Act, Kovanda still had no rights in the property because he did not perfect his judgment against the property prior to Joseph's death.

The Illinois Uniform Fraudulent Transfer Act specifically addresses the issue of fraudulent transfers and creditors and states in relevant part:

"§ 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a

transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the

transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." 740 ILCS 160/5 (West 2002).

Assuming that Joseph's transfer of his interest in the property was fraudulent under section 5 (740 ILCS 160/5 (West 2002)), we must address Kovanda's claim that when a joint tenant fraudulently conveys his or her interest in a property, the conveyance must be avoided and the property restored to a tenancy in common. Kovanda argues Joseph Gayton's voluntary transfer of his interest in the property amounted to an immediate severance of the unities required to maintain a joint tenancy, thereby extinguishing any rights of survivorship. Therefore, any title that would vest in Joseph Gayton, for purposes of his creditors, would vest in Joseph as a tenant in common and after his death, that interest would be owned by his estate.

A joint tenancy is an estate that two or more individuals hold jointly with equal rights. *In re Estate of Alpert*, 95 Ill. 2d 377, 381 (1983). With joint tenancy comes the right of survivorship, which entitles the last surviving joint tenant to take the entire estate. *Harms v. Sprague*, 105 Ill. 2d 215, 224 (1984). A joint tenancy can be severed when one tenant voluntarily or involuntarily destroys one of the four unities (interest, time, title, and possession) that are crucial to the creation and continuance of

a joint tenancy. *Harms*, 105 Ill. 2d at 220.

Kovanda cites to *In re Estate of Martinek*, 140 Ill. App. 3d 621 (1986), in support of his position that when a joint tenant fraudulently conveys his or her interest, reversal of the fraudulent transfer results in a tenancy in common. In *Martinek*, George and Shirley Martinek, husband and wife, obtained an interest in real property by an assignment of contact rights and agreed to perform all of the terms and conditions as agreed to by the assignors. The actual interest in the property had not yet been deeded to them as they were paying for the property by way of an installment contract initiated by the assignors. The original installment contract between the assignors and the owner stated that upon satisfaction of the terms of the agreement, the buyers would take title to the property as joint tenants. Upon George's death, his heirs argued that his estate and Shirley each owned a 50% interest in the property as tenants in common because the contract was executory and no deed granting George and Shirley the property in joint tenancy had yet been delivered.

On appeal, the court found that Shirley Martinek was the sole owner of the property after George's death, as the surviving joint tenant. The property was not part of George's estate and therefore his heirs had no claim to it. *Martinek*, 140 Ill. App. 3d at 630.

Kovanda's reliance of *In re Estate of Martinek* is misplaced as it does not address the issue of the severance of a joint tenancy by way of a fraudulent transfer. Although we are cognizant of the principle that when a joint tenant acts to destroy any

of the unities of joint tenancy, including the conveyance of his or her interest in the estate, the estate changes into a tenancy in common and any right of survivorship is extinguished (*Klajbor v. Klajbor*, 406 Ill. 513, 517 (1950)), we do not believe that this general principle is intended to apply to situations where there is a fraudulent transfer of a joint tenant's interest in the property. Support for our conclusion comes from *Gilbert Brothers, Inc v. Gilbert*, 258 Ill. App. 3d 395 (1994).

In *Gilbert Brothers*, the plaintiff filed an action against Helen Gilbert and her son Steven, as trustee of the Mary Helen Gilbert trust, under the Act for fraudulent transfer of funds held in a certificate of deposit. Prior to her husband Nick's death, Nick and Helen owned the certificate of deposit as joint tenants. Nick had an action for violation of a noncompetition clause pending against him and while the suit was pending transferred his interest in the certificate of deposit to his wife Helen. Nick died in 1986, and in 1990 Gilbert Brothers obtained a judgment against Nick on the noncompetition suit. In 1991, the company filed a memorandum of judgment. The company filed suit under the Act alleging that Nick's conveyance of the certificate of deposit to his wife Helen was fraudulent because at the time of the conveyance Nick expected that judgment on the suit might be rendered against him and that the conveyance was made to prevent the judgment from becoming a lien on the property. The trial court dismissed the complaint.

On appeal, the court found that the trial court properly dismissed the company's complaint based on the fact that it was not filed within the applicable statute of

8

limitations. Moreover, the court found:

> "[A]part from the dismissal, the Company's claim is moot because the Company alleges that Nick, as a joint tenant, fraudulently transferred his interest to the other joint tenant, his wife, and then he died. Assuming the Company was successful on the merits of its claim for fraudulent transfer, the court would reinstate the property as it was at the time prior to the fraudulent transfer. Because Nick's death occurred prior to any judgment received by the Company, the property would have been transferred to the surviving joint tenant at that time of death, extinguishing any rights the Company may have had." *Gilbert Bros. Inc.*, 258 Ill. App. 3d at 400.

Similarly here, assuming that Joseph's conveyance of his interest in the property to Monica was fraudulent, the court should treat the property as if the fraudulent transfer had not been made. Therefore, subsequent to Joseph's transfer of his interest to Monica and prior to Joseph's death, Joseph and Monica owned the property in joint tenancy. See also *DeMartini v. DeMartini*, 385 Ill. 128 (1943) (a fraudulent conveyance is void only as against creditors and the conveyance is treated as if it had not been made). When Joseph died, the property passed to Monica as a joint tenant through rights of survivorship. See also *McDonald v. Estate of Gayton*, No. 04 C 0334 (N.D. Ill August 30, 2005). It is of no consequence that Kovanda obtained the judgment prior to Joseph's death because a judgment only becomes a lien on the real estate of the person against whom it is entered from the time the judgment

9

is filed with the recorder of deeds in the county in which the property is located. 735 ILCS 5/12-101 (West 2002); *Cochran v. Cutler*, 39 Ill. App. 3d 602 (1976). Kovanda did not file the judgment until December 3, 2003, after Joseph ceased to have any interest in the property due to his death. Accordingly, based on the foregoing, we find that the trial court did not err in granting summary judgment for Monica.

The judgment of the trial court is affirmed.

Affirmed.

THEIS, P.J., and HOFFMAN, J., concur.