BARNES, J.,
for the Court:
¶ 1. Hilda Jane Roby Kelly filed a petition for execution with the Monroe County Chancery Court seeking the sale of real property that was owned by Jimmy and Theresa Roby, her deceased ex-husband and his widow, in order to satisfy a judgment of $6,000 that Jimmy owed Hilda. Named as defendants in the petition were Theresa;[1] Theresa’s sister, Mary Phyfer d/b/a SRT Investments; and, in a subsequent amended petition, the estate of Jimmy Roby — Sharon Roby Sargent, Shane Roby, and Garon Roby (“the Roby children” or “the Estate”). In the petition, Hilda claimed her judgment should be treated as a lien against parcels of real *788 property owned by Jimmy and Theresa prior to his death, and which had been conveyed by four deeds to SRT Investments, a company owned by Mary. The deeds were executed by Jimmy and Theresa prior to Hilda’s judgment being awarded; however, the deeds were not recorded until after Jimmy’s death and after Hilda’s enrollment of her judgment.
¶ 2. On Hilda’s “Motion For Default Judgment or In The Alternative Summary Judgment,” the chancery court held that the deeds were void as to Hilda’s judgment since the deeds were recorded subsequent to Hilda’s judgment. However, as Hilda had not executed on her judgment prior to Jimmy’s death, the property passed to Theresa through right of surviv-orship and was not part of Jimmy’s probate estate. The chancellor ordered that any judgment owed to Hilda must be paid from the personal property of Jimmy’s estate and denied Hilda’s motion for summary judgment. Hilda filed a motion to alter judgment, which the chancellor denied, and Hilda now appeals. We affirm the chancellor’s judgment.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 3. On December 10, 1979, Jimmy and Hilda were divorced in Pontotoc County Chancery Court, and Jimmy was ordered to make child-support payments for the couple’s minor son, Shane Roby. Between June 1, 1995, and April 11, 1998, Jimmy was in arrearage for the child-support payments to Hilda. In the meantime, Jimmy had married Theresa, his fourth wife. Between 1986 and 1995, Jimmy and Theresa had acquired five parcels of real property in Monroe County, Mississippi via four warranty deeds. Two of the deeds vested title in Jimmy and Theresa as joint tenants; the other two as tenants by the entirety; therefore, all four deeds included the right of survivorship.[2] On December 1, 1997, Jimmy and Theresa executed four promissory notes and “Real Estate Deeds of Trust” on this property, which secured a $200,000 indebtedness in favor of SRT Investments, an unincorporated business entity operated by Theresa’s sister, Mary.[3] These deeds of trust were recorded in the Monroe County Chancery Clerk’s land records on February 11, 1998. Theresa later testified that the deeds of trust were executed because Jimmy and Theresa had acquired substantial financial debt, and Mary often provided the couple with monetary assistance.
¶ 4. On March 8, 1999, Jimmy and Theresa executed, but did not record, four *789 warranty deeds which conveyed title of the five parcels of real property to SRT Investments. However, Jimmy and Theresa continued to live on the property. On March 30, 1999, in response to a motion filed by Hilda, Jimmy was found in contempt for failing to pay child support, and Hilda was awarded a judgment for $6,000. Hilda enrolled the judgment in Monroe County on May 28,1999.
¶ 5. On August 4, 2002, Jimmy died without Hilda’s judgment being satisfied. On August 20, 2002, Mary recorded the four March 3, 1999 warranty deeds.[4] Then, on September 13, 2004, two years after Jimmy’s death and five years after the enrollment of her judgment, Hilda petitioned the court for sale of the subject property to satisfy her $6,000 judgment. She named Theresa and Mary d/b/a/ SRT Investments as defendants, claiming that at the time of his death, Jimmy “held ownership interest in and to each of the ... parcels of property.” Hilda filed a motion for default/summary judgment on March 16, 2005.[5] On June 10, 2005, Hilda amended her petition, with permission by the court, to include the Roby children as defendants since they were Jimmy’s heirs-at-law. Again, Hilda claimed that Jimmy “had ownership interest in and to the ... real properties as of his August 4, 2002, demise” and concluded that property should be subject to execution as her “valid lien” had priority over any claim by SRT Investments.
¶ 6. On October 6, 2005, the Roby children joined Hilda’s request to recognize her judgment as a lien. Then, on October 21, 2005, the Roby children opened Jimmy’s estate, appointing Sharon as adminis-tratrix. The Estate filed several petitions for relief against Theresa, alleging improper use or disposal of personal assets contained in Jimmy’s estate. On September 20, 2006, the Estate, again joined by Hilda, filed an objection to Mary’s alleged claim to the real property as a creditor and requested that the March 3, 1999 conveyances be set aside. On October 23, 2009, addressing the various petitions filed by the Estate, the chancellor entered an “Opinion and Judgment of Personal Property of Estate.” In the order, the chancellor entered a judgment against Theresa in favor of the Estate for the value of $113,300, including interest.[6]
¶ 7. On November 3, 2009, the chancery court entered its “Opinion and Judgment on Petition for Writ of Execution and Other Relief,” finding that under Mississippi Code Annotated section 89-5-3 (Rev.1999), “the deeds recorded after the enrollment of Hilda’s judgment against the decedent would be void as to Hilda.” See Miss.Code Ann. § 89-5-3 (stating that a conveyance of land is void to a creditor unless the lien *790 or judgment is recorded with the chancery-court clerk “in the same manner that other conveyances are required to be acknowledged or proved and recorded.”). Further, the chancellor noted that “a creditor may not proceed against the realty of a decedent until the decedent’s personal property is exhausted” and that sufficient estate assets existed to satisfy Hilda’s outstanding judgment. However, “[ajnticipat-ing the personalty of the estate may be insufficient to satisfy the outstanding lien and other creditors,” the chancellor also found that since Jimmy and Theresa were joint tenants with rights of survivorship, the real property in question was “no longer subject to execution by Jimmy’s judgment creditor[.]”[7] As Theresa obtained full title to the property through survivor-ship upon Jimmy’s death, the property did not pass to the estate. The chancery court also noted the Estate’s numerous petitions for relief, including its objection to Mary’s claim as an alleged creditor, were not properly before the court at that time and were not considered in its judgment.[8] The chancellor concluded by noting that the opinion was “not res judicata as to the efficacy of Hilda’s judgment lien nor of the alleged indebtedness due under the deeds in trust in dispute.”
¶ 8. Hilda filed a motion to alter or amend the judgment of the chancery court. In her motion, Hilda argued that section 89-5-3 meant that the conveyances are valid and binding from Jimmy and Theresa to Mary d/b/a SRT Investments and do not “adverse[ly] affect” Hilda’s judgment lien. Thus, she claimed Jimmy and Theresa had no ownership of the subject property as of Jimmy’s death; rather, “Mary held title and ownership to the subject real property subject to the judgment lien of Hilda.”[9] In her response to Hilda’s motion, Mary argued that the deeds were void under section 89-5-3, meaning “that none of the joint tenancies terminated and no title passed to Mary Phyfer that would be superior to Hilda’s judgment lien” and that Hilda’s right to execute “no longer existed” after Jimmy’s death. The chancery court, denying Hilda’s motion, aptly noted that Hilda is not a party, heir or subsequent purchaser to the deeds; therefore, the deeds are not valid as to her. Further, even assuming that her judgment did attach, Jimmy conveyed his title; therefore, no interest “remained therein to which Hilda’s judgment could attach[.]” Hilda now appeals.[10] Finding no abuse of discretion in the chancellor’s denial of Hilda’s motion, we affirm the chancery court’s judgment.
STANDARD OF REVIEW
¶ 9. A chancellor’s findings “are subject to an abuse-of-discretion standard *791 on review.” Carlisle v. Allen, 40 So.3d 1252, 1256 (¶ 20) (Miss.2010) (citing Barton v. Barton, 790 So.2d 169, 175 (¶ 17) (Miss.2001)). Unless the chancellor findings are “manifestly wrong, clearly erroneous, or applied the wrong legal standard[,]” they will not be disturbed on appeal. Miller v. Parker McCurley Props., L.L.C., 36 So.3d 1234, 1239 (¶ 9) (Miss.2010) (quoting Powell v. Campbell, 912 So.2d 978, 981 (¶ 8) (Miss.2005)). “Questions of law, however, are reviewed de novo.” Id. (citation omitted).
ANALYSIS
¶ 10. In its opinion resolving the petition for execution, the chancery court determined that the March 3, 1999, conveyances to SRT Investments were void as to Hilda’s judgment since the warranty deeds were not recorded until after Hilda had enrolled her judgment. Section 89-5-3 provides that all conveyances of lands “shall be void as to all creditors ... unless they be acknowledged or proved and lodged with the clerk of the chancery court of the proper county, to be recorded in the same manner that other conveyances are required to be acknowledged or proved and recorded.” (Emphasis added). See also Austin Clothing Co. v. Posey, 105 Miss. 720, 727, 64 So. 5, 6 (1914) (a conveyance of land “is not valid as against third persons unless it is duly filed for record, in such manner as a mortgage or deed of trust is required to be filed”). However, “as between the parties and their heirs, ... said instruments shall nevertheless be valid and binding.” Miss.Code Ann. 89-5-3 (emphasis added). No one contests the chancellor’s ruling that the deeds were void as to Hilda under section 89-5-3.
¶ 11. The chancellor further found, however, that since the conveyances to SRT Investments were void as to Hilda’s judgment, Jimmy and Theresa still held the property as joint tenants with right of survivorship. The chancellor concluded that since Jimmy’s interest in the property was conveyed immediately to Theresa upon his death, it “would not be subject to post-mortem execution by his judgment creditor[.]” Thus, Theresa obtained full ownership of the realty after Jimmy’s death, and the property would not be part of the probate estate. See Oliver v. Oliver 812 So.2d 1128, 1138 (¶ 39) (Miss.Ct.App.2002) (“Immediately at the death of one joint tenant, the decedent’s interest vests at that time in the other joint tenant(s).”) (quoting Strange v. Strange, 548 So.2d 1323, 1326 (Miss.1989)).
¶ 12. On appeal, Hilda claims that: (1) the conveyances to SRT Investments were fraudulently conveyed and should be considered void as to Hilda under Mississippi Code Annotated section 15-3-3 (1972) and set aside; (2) that her judgment attached by operation of law in 1995 when Jimmy failed to make child-support payments; and (3) since the conveyances to SRT Investments are valid between the parties, the joint tenancy held by Jimmy and Theresa was severed, allowing Hilda’s lien to attach to the property. See Ayers, 417 So.2d at 914 (“[A] joint tenancy may be destroyed by one of the joint tenants conveying his undivided interest.”). In effect, Hilda wants to benefit from a determination that, as it relates to her judgment, the deeds are both void yet simultaneously valid. However, Hilda has not provided this Court with any authority to support such a legal conclusion.[11] Although Hilda *792 has cited the general proposition that an enrolled judgment lien attaches to a property and is subject to a writ of execution, she has not shown how it affects cases involving joint tenants and a judgment that was not executed until after the death of the judgment debtor.
¶ 13. Notwithstanding the chancellor’s findings that the conveyances were void as to Hilda’s judgment, Hilda also contends that the conveyance of deeds to SRT Investments was void as fraudulent and meant to “hinder, delay or defraud Hilda as [Jimmy’s] judgment creditor.” She further contends “that such transactions were not supported by good and sufficient consideration.” To support her claim, Hilda cites to Mississippi Code Annotated section 15-3-3 (Rev.2003), which states in pertinent part:
Every ... conveyance of lands, ... by writing ... had or made and contrived of ... fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts ... shall be deemed and taken only as against the person or persons, ... and every of them whose debts, ... or interests by such guileful and covinous devices and practices shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be dearly and utterly void; any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.
(Emphasis added). “To invalidate fraudulent conveyances, Mississippi] Code Annotated section] 15-3-3 (1972) was enacted to avert debtors from keeping property, accessible to payment of their debts, away from creditors.” Morreale v. Morreale, 646 So.2d 1264, 1268 (Miss.1994) (citing Barbee v. Pigott, 507 So.2d 77, 84 (Miss.1987)).[12]
¶ 14. Mary argues that this issue is waived as Hilda presents it for the first time on appeal, and we agree. We acknowledge that Hilda’s petition for execution requested that, as alternative relief, the deeds be set aside since the “transaction was an attempt to defraud Petitioner as a creditor.” Although this language was not contained in Hilda’s amended petition, it did state that the conveyances to SRT Investments “were conducted with an intent of avoiding the claim of Petitioner as a creditor of Jimmy Dale Roby.” However, the record does not reflect that Hilda provided any authority (e.g., section 15-3-3) to support this claim. Furthermore, she never pursued a ruling on this issue. Fraud was not addressed by the chancellor in her opinion denying the petition for execution, and Hilda failed to present this issue in her motion to alter the judgment. See Moore v. State, 785 So.2d 285, 287 (¶ 7) (Miss.2001) (“Issues unsupported and not argued are abandoned and need not be considered.”) (citation omitted). There is no indication in the record that Hilda provided the chancellor with any authority that the outcome of the proceedings would have been different if the conveyances were deemed fraudulent. Accordingly, we find this issue waived.
¶ 15. Hilda also asserts that “[a] judgment debtor and judgment creditor *793 relationship existed ■ between Jimmy and Hilda from and after June 1, 1995,” the date Jimmy failed to continue making child-support payments. Hilda cites Mississippi Code Annotated section 93 — 11— 71(1) (Supp.2010), which states:
Whenever a court orders any person to make periodic payments of a sum certain for the maintenance or support of a child, and whenever such payments as have become due remain unpaid for a period of at least thirty (30) days, a judgment by operation of law shall arise against the obligor in an amount equal to all payments that are then due and owing.
(Emphasis added). Again, there is nothing in the record to reflect that Hilda ever presented this argument to the chancery court. Thus, this issue is waived on appeal. Notwithstanding the procedural bar, this claim is also without merit. The remainder of the statutory provision in subsection (2) states: “Any judgment arising under the provisions of this section shall operate as a lien upon all the property of the judgment debtor, both real and personal, which lien shall be perfected as to third parties without actual notice thereof only upon enrollment on the judgment roll” Miss.Code Ann. § 93-11-71(2) (Supp.2010) (emphasis added); see also Miss.Code Ann. § 11-7-191 (Rev.2004) (“A judgment shall not be a lien on any property of the defendant thereto unless the same be enrolled.”). Hilda did not enroll her judgment until after the deeds to a third party, Mary d/b/a SRT Investments, had been executed; thus, the monthly child support owed by Jimmy did not constitute a lien upon the real property.
¶ 16. Hilda’s main contention is that, since the March 3,1999 conveyances “were valid as to Jimmy and [Mary,]” Jimmy and Theresa “divested their ownership interest” and terminated the joint tenancy, including the right of survivorship. Therefore, she argues that Jimmy conveyed the property to Mary “subject to the right of Hilda as judgment creditor to have the property seized under writ of execution for satisfaction of her judgment. The judgment lien followed the land and not Jimmy to his grave.”
¶ 17. Prior to executing the conveyances to SRT Investments, Jimmy and Theresa held ownership interest in the subject properties either as joint tenants or tenants by the entirety, both with rights of survivorship. As we have briefly noted, both types of estates have the four “unities of time, title, interest, and possession,” but a tenancy by the entirety has a fifth unity of person. Ayers, 417 So.2d at 914. It is a common-law principle that “real property held as tenants by the entireties is exempt from the claims of creditors who do not have joint judgments against the husband and wife.” Rogers v. Rogers, 257 Va. 323, 512 S.E.2d 821, 822 (1999) (citing Vasilion v. Vasilion, 192 Va. 735, 66 S.E.2d 599, 602 (1951)). That fifth “unity of marriage ... [means that] [n]either spouse can by separate act make an absolute disposition of property they hold as tenants by the entirety, nor can a judgment lien creditor of one spouse subject that property to the satisfaction of his lien.” Id.; see also Beach Cmty. Bank v. St. Paul Mercury Ins. Co., 635 F.3d 1190, 1198 (11th Cir.2011) (holding that “only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property”). The chancellor also recognized in her opinion on the petition for execution that Mississippi statutory authority states that assets of a debtor do not include “[a]n interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.” Miss.Code Ann. § 15 — 3—101 (b)(iii) (Supp.2010). According *794 ly, Hilda never had any possibility of a judgment lien over those particular parcels of property that Jimmy and Theresa held as tenants by the entirety.
¶ 18. Regardless, we agree with the chancellor that any right Hilda had to execute her judgment on the jointly held property ceased to exist upon Jimmy’s death. See Helinski v. Harford Mem’l Hosp., 376 Md. 606, 831 A.2d 40, 47 (Md.Ct.Spec.App.2003) (finding that a “lien must be executed within the lifetime of the judgment debtor in order for the judgment creditor to levy on the property”); E. Shore Bldg. & Loan Corp. v. Bank of Somerset, 253 Md. 525, 253 A.2d 367, 370 (Md.Ct.Spec.App.1969) (holding that if a “judgment creditor does not execute upon the judgment against the judgment debt- or-joint tenant during his life, the entire joint estate is held by the surviving joint tenant ... without any lien of the judgment against the property thus held by them”). The Mississippi Supreme Court has also recognized that a surviving joint tenant takes property clear from claims by a creditor of the deceased tenant. Wallace v. United Miss. Bank, 726 So.2d 578, 584 (¶ 21) (Miss.1998) (discussing personal property).
¶ 19. As stated, Hilda has not provided any authority to support how the conveyances to SRT Investments could be considered void, yet also valid, as to her judgment. The chancellor, in her well-reasoned opinion, returned the parties to the status quo-that is the position they would have been in had the conveyances to Mary d/b/a SRT Investments never occurred. The chancellor explained that the last sentence of section 89-5-3 has no application to Hilda as she was not “the parties and their heirs.” In conducting our own research, we acknowledge that there is a split of authority as to whether a finding of fraud in a conveyance terminates a joint tenancy as an equitable remedy. On the one hand, in Campbell v. Drozdowicz, 243 Wis. 354, 10 N.W.2d 158, 160 (1943), the Wisconsin Supreme Court held that a fraudulent conveyance resulted in “a severance and destruction of the joint tenancy with its right of survivorship between them” which cannot be “re-established or restored by virtue of the subsequent adjudication that the conveyance was fraudulent and void as to creditors so as to entitle them to have it set aside to the extent necessary to satisfy their claims.” Compare Bank of Lexington v. Jones, 456 So.2d 784, 786 (Ala.1984) (stating that “[w]hen a joint tenant participates in activity to defraud his creditor[,] he may not” turn around and shelter from execution the property that is the subject of the fraud as the result would be inequitable) (4-4. decision); with dissent at 787 (Tor-bert, C.J., dissenting) (theory of equitable estoppel not appropriate “because ‘estop-pels are protective only, and are to be invoked as shields and not as offensive weapons, and their operation should be limited to saving harmless, or making whole, the person in whose favor they arise, and they should never be the instruments of gain or profit.’ ”).
¶ 20. On the other hand, in a case similar to the present one, Gilbert Bros. v. Gilbert, 258 Ill.App.3d 395, 196 Ill.Dec. 492, 630 N.E.2d 189 (1994), the Illinois Appellate Court determined that the joint tenancy remained intact, even after a finding of fraud in the conveyance. In Gilbert Bros., the husband, Nick Gilbert, owned a certificate of deposit (CD) with his wife as joint tenants. After an action was filed against Nick by his former company, ownership of the CD was transferred to the Gilberts’ son as trustee. Nick died shortly thereafter. Id., 196 Ill.Dec. 492, 630 N.E.2d at 191. Gilbert Brothers complained the conveyance was fraudulent to *795 escape a potential judgment lien. Although the case was dismissed as the statute of limitations had run, the appellate court noted:
Moreover, apart from the dismissal, the Company’s claim is moot because the Company alleges that Nick, as a joint tenant, fraudulently transferred his interest to the other joint tenant, his wife, and then he died. Assuming the Company was successful on the merits of its claim for fraudulent transfer, the court would reinstate the property as it was at the time prior to the fraudulent transfer. Because Nick’s death occurred prior to any judgment received by the Company, the property would have transferred to the surviving joint tenant at that time of death, extinguishing any rights the Company may have had.
Id., 196 Ill.Dec. 492, 630 N.E.2d at 192-93 (emphasis added); see also Covington v. Murray, 220 Tenn. 265, 416 S.W.2d 761, 764 (1967) (fraudulent conveyance by a husband to his wife did not convert tenancy by the entireties into a tenancy in common; thus, upon the husband’s death, the wife retained fee simple title extinguishing creditor’s lien.); cf. Marine Midland Bank v. Murkoff, 120 A.D.2d 122, 130, 508 N.Y.S.2d 17 (N.Y.App.Div.1986) (“the relief to which a defrauded creditor was entitled in an action to set aside a fraudulent conveyance was limited to that which could have been obtained had there been no conveyance.”).
¶ 21. Mississippi has not addressed the issue of whether a fraudulent conveyance severs a joint tenancy. The statute simply states that fraudulent conveyances are to be considered “clearly and utterly void” as against a creditor. See also Morreale v. Morreale, 646 So.2d 1264 (Miss.1994); Blount v. Blount, 231 Miss. 398, 95 So.2d 545 (1957). Nevertheless, the Mississippi Supreme Court has held that: “Equitable estoppel is a doctrine that is to be applied cautiously. It is to be used as a shield and not a sword.” First Investors Corp. v. Rayner, 738 So.2d 228, 233 (¶ 22) (Miss.1999) (citing Covington County v. Page, 456 So.2d 739, 741 (Miss.1984)); see also Murray, 416 S.W.2d at 764 (“The doctrine of estoppel may be urged to protect a right, but never to create one.”). Hilda’s claims are an attempt to be placed in a better position than she would have been had the conveyances not been executed, which is not the aim of equity. Thus, this Court is compelled to find that, even if the conveyances to SRT Investments were fraudulent, and thereby void as to Hilda’s claim, Jimmy and Theresa still held the property as joint tenants with right of survivorship, as if the conveyances had never occurred.
¶ 22. Hilda still retains her judgment, which may be executed against the personal property of Jimmy’s estate. Accordingly, we find no abuse of discretion in the chancellor’s denial of Hilda’s petition for execution and motion to the alter judgment as the March 3, 1999 conveyances were void as to Hilda’s judgment. As a result, Jimmy and Theresa held the property as joint tenants or tenants by the entirety with a right of survivorship, with Theresa taking the property free from Hilda’s judgment at Jimmy’s death.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., MYERS, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. Although listed as an appellee, Theresa Roby is not actively participating in this appeal. The chancery court entered a judgment against Theresa on October 23, 2009, (see further detail below), ordering her to pay $113,300 to the Estate for Jimmy’s personal property that she had sold. In a letter to this Court, Theresa stated that she had filed Chapter 7 bankruptcy, discharging the judgment owed to the Estate and "also any potential foreclosure deficiency owed Mary Phyfer[J” There are now only two appellees that are participating in this appeal: Mary Phyfer and the children of Jimmy Roby representing the estate.

. A thorough discussion of the difference between joint tenancy and tenants by the entire-ties is contained in Ayers v. Petro, 417 So.2d 912, 914 (Miss.1982), which states that both estates have the common "unities of time, title, interest, and possession ... but in an estate by entirety there is an additional unity, namely, that of person.... The seizin of the tenants distinguishes the two estates, and a marked, and perhaps the principal, distinction lies in the possibility of severance and destruction.” While a conveyance by one party of an undivided interest in a joint tenancy severs the estate, "[a]n estate by entirety may exist only in a husband and wife and may not be terminated by the unilateral action of one of them because they take by the entireties and not by moieties.” Id. Further, it has long been held that:
Joint tenants, by reason of the combination of entirety of interest with the power of transferring in equal shares, are said to be seised per my et per tout, or by the half and the whole, but tenants by the entirety are seised per tout et non per my, and the conveyance by either husband or wife will have no effect against the other if survivor.
In re McKelway's Estate, 221 N.Y. 15, 116 N.E. 348, 349 (1917).

. Mary explained that the reason for the delay in recording the deeds was because Jimmy had begged her not to do so, as he hoped to repay his debt to her and possibly reclaim the property.

. Although Hilda's motion states that Theresa and Mary failed to filed an answer, the record reflects that Theresa filed a motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure, which alters the thirty-day requirement, and a responsive pleading was not required. Although we cannot determine from the record why Mary filed no responsive pleading, counsel for Mary entered an appearance with the court. As there was further discovery conducted and the motion for default judgment never pursued further by Hilda or ruled on by the court, it is considered to have been abandoned. See Lucas v. Baptist Mem'l Hosp.-N. Miss., Inc., 997 So.2d 226, 231 (¶ 14) (Miss.Ct.App.2008) (A movant has an "affirmative duty” to make sure that his motion is brought to attention of the judge and request a hearing on the motion.)

.The chancery court had previously conducted two hearings regarding Theresa’s improper disposal of estate assets.

. The chancellor stated that had Hilda executed on her judgment prior to Jimmy’s death, "a different result might have followed!)]” There was no need for the chancellor to distinguish between the property held as joint tenants and that held as tenants by the entirety as all conveyances granted survivorship rights in Theresa.

. Mary asserts on appeal that the court’s decision not to consider the petition was because it was untimely, being outside of the statute of limitations.

. We note that this assertion is contrary to her position in her petition for execution and amended petition — that until his demise in 2002, Jimmy "held ownership interest in and to each” of the parcels of property at issue.

.We observe that in the order denying Hilda’s motion to alter the judgment, the chancellor ruled that: "This matter is ready for appeal to the Supreme Court of Mississippi should any party elect to do so.” While this language is extremely weak to render a Mississippi Rule of Civil Procedure 54(b) final judgment, we find that we do have jurisdiction and will address the merits.

. Although the Estate has filed an appellee brief, arguing that the conveyances should be "set aside and held for naught” to allow the Estate to "reach the real property to satisfy” Jimmy's debts, its claims were not addressed by the chancery court in the opinions considered in this appeal. Therefore, this Court has *792 no jurisdiction as to any claims made by the Estate.

. While section 15-3-3 was in effect at the time of the conveyances at issue, we note that in 2006, the statute was repealed and replaced with Mississippi Code Annotated section 15-3-107 (Supp.2010). The basic intent of the statute, however, remains the same. Section 15-3-107 states that a conveyance is considered fraudulent if the debtor "made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor.”